WILLIAM E. WELBOURN *v*. PEOPLES LOAN & TRUST CO.

[No. 272A84. Filed June 12, 1972. Rehearing denied July 25, 1972. Transfer denied January 9, 1973.]

*John T. Cook,* of Winchester, *Robert F. Wisehart,* of Middletown, *Wayne J. Lennington,* of Muncie, for appellant.

*Ice, Miller, Donadio & Ryan,* of Indianapolis, *Hunter, McCoy & Sullivan,* of Winchester, *James R. Kellam,* of New Castle, for appellee.

LOWDERMILK, J.—Defendant-appellee is a banking institution duly organized under the statutes of the State of Indiana, and located in Winchester, Indiana, with a branch bank at Modoc, Indiana. The bank has assets of $1,500,000.00.

We are concerned here with facts surrounding the branch bank at Modoc, which is a small town.

The Modoc bank was in a brick building and faced a fairly well lighted street and had an unbarred window on the back side of the building some six feet above the ground.

There was a vault in the bank which was locked each night and which vault contained a number of safety deposit boxes, which were advertised in the Winchester newspaper to be rented to the general public for a consideration.

Plaintiff-appellant rented five of these boxes at an annual rental per box of $6.88.

The Modoc branch bank was burglarized the following times: February, 1963; February, 1968; December 28, 1968 and February 3, 1969. On the occasion of the break-in of February 3, 1969, the safety deposit boxes rented by plaintiff-appellant which contained a coin collection were opened and a substantial part of the coin collection was taken.

The evidence in the cause showed that the vault door was of steel one-fourth inch thick and the combination thereon was either cut out or knocked off and punched at each of the burglaries and when the safe was punched the dogs inside

the same were moved by hitting a punch with a heavy object and then the door was readily and easily opened.

There was no warning device or signal alarm on the vault door and after the burglaries the door would be removed; taken to a welder, and the part damaged or cut out, on the occasion where the combination had been cut out with a torch and the same combination was welded back in to the door and nothing further done except to hang the door in its original position, with the lock securely welded back in place.

There were no bars or rods to bar entrance to the vault or prevent the opening of the door after the safe had been punched or the combination cut out.

After each burglary the Indiana State Police detectives investigated the same and they were qualified as men with considerable experience in investigating safe burglaries.

There was evidence that entry could be gained to the building through the back window with no trouble at all.

A State Police detective testified as to the flimsiness of the door and the inadequacy of the combination lock and informed the bank officials that he could enter the same with a can opener.

There was further evidence that the State Police detectives advised the bank officials to secure and install safety devices consisting of alarms and bars that would keep the door closed in the event the combination was knocked loose or a device that would signal an alarm when a door was subjected to heat which, of course, would be from a cutting torch.

The directors of the bank, in their meetings following the burglaries up to the burglary of February 3, 1969, discussed the matter of the break-ins and losses and agreed that something should be done as a safety and preventative measure, but took no precautionary measures for the safety of the bank while waiting for the safety and preventative measures to be completed.

There was evidence of bank employees as to the construction of the vault and the door and the safety combination.

There was evidence from bank employees and bank officials of other small banks and branch banks in surrounding communities the size of Modoc or perhaps a little larger. Their evidence was that their vault doors were from an inch to three inches thick, with various combinations and alarms, such as time locks and heat and bar alarms which would be activated if the vault lock was disturbed or attempted to be disturbed and also there were time locks on the doors and a system of rods that would spring into place and prevent the opening of the door in the event there was further damage to the lock.

The plaintiff-appellant's complaint is in two Paragraphs, the first setting up the bank's authority, the rental of the lockboxes, the matter of legal admission into the lockboxes by the renters thereof and that plaintiff-appellant had a coin collection worth $12,000.00 in the bank in the lockboxes which had been removed from the bank when he called for them in February, 1969 and demanded damages.

The second legal Paragraph incorporated the allegations of the first legal Paragraph and alleged fraud on the part of the defendant-appellee by having represented to the public, including the plaintiff-appellant, through newspaper advertisements that the safety deposit boxes owned by the defendant and located in Modoc, Indiana, were a safe place to store valuable articles of personal property. Plaintiff-appellant relied on these representations and rented the boxes and that the defendant knew that the same was not safe and not properly guarded and that the defendant knew of the previous break-ins before plaintiff-appellant rented the boxes.

In this legal Paragraph he prays for exemplary damages in the sum of $10,000.00.

The defendant's answer was in four Paragraphs, the first two of which alleged plaintiff-appellant failed to state a cause of action in the first and second legal Paragraphs of his complaint.

The third and fourth Paragraphs of answer were of admission and denials of each legal Paragraph of the complaint.

This cause was submitted to the court for trial by jury on the issues above stated. · At the close of plaintiff-appellant's evidence defendant-appellee filed a motion under Rule TR. 50 for judgment on the evidence, which, omitting the formal parts thereof, is in the words and figures as follows: to-wit:

"1. The plaintiff has the burden of proving that Ind. Ann. Stat. Section 18-1111 is not applicable.

"2. The plaintiff has failed to submit any evidence that the defendant carried a policy or policies of insurance for the benefit of the owners of property in its safe deposit boxes.

"3. The only evidence is of a contract of indemnity and not a contract of insurance.

"The defendant further moves the Court to enter judgment for the defendant on the evidence pursuant to T.R. 50 on Count 2 of the plaintiff's complaint for each of the following reasons:

"1. The plaintiff has failed to show any false statement made by the defendant.

"2. The plaintiff has failed to show that the defendant had any obligation to advise the plaintiff that the safe deposit boxes had been broken into on the two occasions they had been so broken when the bank was burglarized.

"3. Plaintiff has failed to introduce any evidence to show that the defendant intended to deceive the plaintiff in any way."

The court, after reading and examining said motion for judgment, made a statement which defendant-appellee sets out in its brief, in which the trial judge spoke in words which mean to us that he was apologizing for what he was being required to do under his construction of the statute and said that he felt he was bound under the statute in the case, as it was plain, yet "leads to a harsh result." He further said, "I think it leads inescapably to this conclusion whether it be desirable or not."

Following this, the court timely entered its judgment for

the defendant-appellee on the motion for judgment on the evidence on each count of plaintiff's amended complaint.

Plaintiff-appellant timely filed his motion to correct errors, which consisted of two specifications, the first specification being that the granting of the judgment at the conclusion of plaintiff's evidence was contrary to the evidence; that plaintiff proved a prima facie case against the defendant and that plaintiff sustained damages; and that plaintiff also proved a prima facie case of negligence against the defendant and that plaintiff sustained damages. The second specification was that the decision and judgment of the court was contrary to law in that the court granted judgment for the defendant on plaintiff's evidence.

The statute in question which the court relied upon is Ind. Stat. Ann., § 18-1111 (Burns 1964 Replacement), which reads as follows:

"Any bank or trust company shall have power to receive, upon terms and conditions to be prescribed by such corporation, not inconsistent with the provisions of this sections [section], upon deposit for safe-keeping, or in escrow, moneys, bonds, mortgages, jewelry, plate, stock, securities and valuable papers of any kind, and other personal property for hire, and to rent or lease receptacles for safe deposits of personal property. No bank or trust company nor any of the assets thereof shall be liable, for the value of any property received by it pursuant to the power conferred by this section nor for damages for the loss, theft or misappropriation thereof. Any bank or trust company may procure and carry a policy or policies of insurance for the benefit of the owners of any property received by it pursuant to the power conferred by this section."

Defendant-appellee admits in its brief "There was evidence from which it could be determined that the defendant was negligent." and further contends that there was no evidence of false statements on the part of the defendant nor was there any evidence of reliance by the plaintiff on any statements of the bank. It further contends that the plaintiff-appellant failed to make even a minimal case on the second legal Para-

graph of his amended complaint even without regard to the statute relieving the bank for losses from safety deposit boxes.

Defendant-appellee further, in its brief, says that the Legislature passed a statute which provides that no bank shall be liable for the value of property received by it (in safe deposit boxes) "nor for damages for the loss, theft or misappropriation thereof. . . ." It contends that this statute is clear and unambiguous and is broad enough to preclude the bank's liability even if the bank were negligent. The language is "no bank . . . shall be liable for . . .", and that the statute also authorized banks to procure policies of insurance for the benefit of depositors and states that the bank did not procure such a policy for the benefit of the owners of the property deposited in the safe deposit boxes. The bank does admit that it had the Banker's Blanket Bond, which provided, among other things, that it would indemnify the bank for any losses it became legally liable to pay for any losses from safety deposit boxes. Its next contention is that said policy can in no way be construed as a policy for the benefit of the owners of the property in the safe deposit boxes and that it is only a policy which indemnifies the bank for losses it incurs and the statute in this case says the bank shall not be liable.

We are of the opinion that the General Assembly, in enacting this statute, intended it to protect the bank that had been diligent in the protection and safety of its depository, including safety deposit boxes, which would necessarily be a safeguard to its patrons' property.

Defendant-appellee, at page 4 of its brief, states:

"With respect to Count 1 of the complaint, the only issue is whether or not the language 'no bank . . . shall be liable for the value of property received by it . . . [in safe deposit boxes] nor for damages for the loss, theft or misappropriation thereof.' contains an exception to make it not applicable if the bank is negligent."

We agree with defendant-appellee that this is the only

issue raised in legal Paragraph I of the complaint and is one of the issues of this appeal.

The statute upon which defendant-appellee relies was enacted by our General Assembly in the year of 1933, of which this court takes judicial notice that many banks in Indiana were already closed and some were in the process of being closed as being insolvent. It is our opinion that this statute was enacted at that time for the purpose of helping banking institutions throughout the state remain solvent and open and was enacted out of dire necessity. It is our further opinion that the members of our General Assembly did not have in mind at the time of enactment of said statute to protect a bank to the exclusion of the benefit of the people of this State.

The General Assembly authorized the bank to carry insurance for its protection and with that we find no fault.

However, defendant-appellee contends that the policy is only for the benefit of the bank and not for the holders of the safety deposit boxes in the bank.

The defendant-appellee claims that the insurance policy is an indemnity policy, which it is, and therefore if a judgment is returned against the bank, the bank would have to pay the judgment out of its assets in derogation of the statute. With this we agree. However, since the policy would indemnify the bank for any assets which it paid out on the judgment the same would be a legal liability and the bank having its assets returned to it in the form of the indemnity policy, the spirit of the statute is most certainly not contravened. Had the plaintiff-appellant been permitted to have pursued and concluded his lawsuit and been awarded a money judgment against the defendant bank, then after the same had been paid the defendant-appellee bank would have had a just and equitable right to demand to be indemnified by its insurance carrier writing the Banker's Blanket Bond policy and to have been reimbursed in full for the amount expended by it in payment of the claim.

Both parties in their respective briefs discussed *Iroquois Underwriters* v. *St. ex rel. Morgan, Admx.* (1937), 211 Ind. 463, 5 N. E. 2d 908. The *Iroquois* case is an action wherein there was an indemnity policy sold a Mr. Garner, who later struck and killed one Fred Morgan, as a result of which there was a judgment rendered against Garner for $2,500.00.

In the meantime Garner became insolvent, could not pay off the judgment and the court was confronted with the question of whether an action would lie against Iroquois Association. It was alleged that the Iroquois Association was under obligation to pay the amount of the judgment rendered against their assured, Garner.

Our Supreme Court said that the main question to be decided was whether the contract of insurance issued to Garner is by its terms one of liability or indemnity. The court cited the case of *Kingan and Company, Limited* v. *Maryland Casualty Company* (1917), 65 Ind. App. 301, 315, 115 N. E. 348:

> " 'Indemnity policies are, as a general rule, by virtue of their provisions and the nature of the insurer's undertaking grouped by the courts into two classes: First, those indemnifying against loss or damage; and secondly, those affording protection against liability. Under a policy of the first class, it is necessary that the insured show that he has suffered damage or loss as by actually paying the judgment fixing his liability in order that he may have recourse to such policy. Where a policy belongs to the second class, the insured may turn to it for relief as soon as his liability has become legally fixed and established, although he has not suffered actual loss, as by being required to discharge such liability.' "

Our Supreme Court, in speaking further, said:

> "The main difference between an insurance contract of indemnity and one to pay legal liability—is that, upon the former, an action can not be brought and a recovery had until the liability is discharged; whereas, upon the latter, the cause of action is complete when the liability attaches. If, in the instant case, the policy issued to Garner is one to indemnify against loss, it is necessary to show an actual loss or damage before they [sic] can be a recovery; but,

if the policy is a contract to protect the assured against liability merely, then an action may be maintained as soon as the liability is legally imposed, regardless of the question as to whether any actual loss or damage has been suffered. *Campbell, Receiver* v. *Maryland Casualty Company of Baltimore, Maryland* (1912), 52 Ind. App. 228, 97 N. E. 1026."

The court said further in examining the terms of the policy that only one conclusion could be reached and that an indemnity instead of liability insurance had been created and that no action shall lie under the policy unless for loss actually sustained and paid.

In examining the terms of the policy the court quoted the provisions of sub-section (g) of Section 5:

" 'No action shall lie against the Association or any Subscriber thereof to recover for any loss under this contract unless it shall be brought by the subscriber named in the warranty herein, for moneys actually paid by him in legal tender of the United States in satisfaction of a final judgment after actual trial of the issue.' "

In construing said sub-section the court said:

"It seems to us that the meaning of the foregoing language is perfectly clear, and that but one conclusion can be reached therefrom, and that is there is created an indemnity instead of liability insurance; and no action shall lie under the policy unless for loss actually sustained and paid. Subsection (g) of section five creates what is known as a 'no action clause' which has led to much confusion in the decisions of the different jurisdictions of the country. In the instant case, however, we think the language is so clear that there can be but one interpretation made. Such a clause, as above set out, has been held by many of the courts of last resort in this country to create an indemnity, as distinguished from liability insurance. * * *"

The court held, further, under sub-section (g) of section five that the wording was so clear and explicit that the intention of the parties to the contract was such that no doubt could exist that an action would not lie against the Association, or any subscriber thereof, to recover any loss unless

brought by a subscriber for moneys actually paid by him in satisfaction of a final judgment after actual trial of the issues.

The court further said ". . . This was the agreement made by the parties, and the court cannot make another contract for them. . . ."

It must be noted and remembered in the case at bar that the policy in question provides:

"This Insuring Clause is extended to cover the Insured's legal liability . . ."

and further provides:

"SAFE DEPOSIT BOX LEGAL LIABILITY—The Underwriter agrees to indemnify the Insured * * *"

In construing this policy we are of the opinion it is such type of policy that it protects the bank under Burns Revised Statute § 18-1111, *supra,* and further protects the persons paying a consideration for rental of safety deposit boxes. The protection to the renter of the safety deposit box who sustained loss is provisioned upon his first securing a judgment against the bank, which pays off the judgment, and then will be reimbursed by the insurance carrier which the bank, in this case, admits they have and the bank will sustian no loss under the provision of said § 18-1111.

Under Paragraph I of the complaint, the defendant-appellee admits in its brief, at page 9, in referring to the allegations of the complaint, the following: ". . . The first was negligence and the second was fraud or false representations. *There was evidence from which it could be determined that the defendant was negligent. . . .*" (Our emphasis.)

With that admission of defendant-appellee we agree. We have heretofore set out some of the facts of the case which show such negligence and we feel there is no reason to further burden this opinion with a restatement of said acts of negligence.

We must next consider the second legal Paragraph of the

complaint, to which defendant-appellee directed its motion under Rule TR. 50, and among other things, alleged:

"1. The plaintiff has failed to show any false statement made by the defendant.
"2. * * *
"3. * * *"

which was also sustained.

There was evidence introduced that after the bank at Modoc had been burglarized and nothing had been done to correct the faulty and inadequate safe there were newspaper advertisements, advertising lock box rentals within said bank.

As we have many times said before, we will not weigh the evidence, and are not weighing the evidence now, but we do insist that this opinion not be interpreted that this court feels there was evidence of any false statement made by the defendant. However, the rule is that if there is any evidence introduced from which a jury or other trier of the facts might infer that the bank, knowing of the burglaries and advertising to rent lockboxes for a consideration, might or could infer that the officers of the bank at the time of making the advertisements knew the bank was not safe, then, in our opinion, there was sufficient evidence that that proposition under legal Paragraph II should have gone to the jury.

The court said, in *Indpls. etc. R. Co.* v. *Hubbard* (1905), 36 Ind. App. 160, 74 N. E. 535:

"Juries have the right to draw reasonable inferences from the facts proved. If evidence tends to prove the essential facts involved in the case it is sufficient."

Our holding the proposition should have been submitted to a jury to pass upon does not necessarily mean that the jury would necessarily find for the plaintiff.

In the case of *Indianapolis Saenger Chor, Inc.* v. *AFNB* (1971), 149, Ind. App. 665, 274 N. E. 2d 728, 27 Ind. Dec. 475, the court quoted the proper test for the giving of a per-

emptory instruction, in its quote from the case of *Whitaker* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734:

> " 'When there is some evidence or legitimate inference supporting each material allegation of the complaint, the court will not weigh the conflicting evidence or inferences but will consider only the evidence and inferences that are most favorable to the party against whom the motion for a peremptory verdict is directed. [Citing cases.]
>
> " 'In determining whether a peremptory instruction should be given the court must accept as true all facts which the evidence tends to prove and draw, against the party requesting such instruction, all inferences which the jury might reasonably draw. [Citing cases.]' "

Specification 1 of the motion to correct errors was that the negative judgment had presented no question to this court. *Hardy* v. *Town of New Harmony* (1967), 248 Ind. 350, 227 N. E. 2d 689.

Specification 2 of the motion to corect errors was that the ruling of the court was contrary to law as to legal Paragraphs I and II of the amended complaint.

For the above and foregoing reasons we find that specification 2 of the motion to correct errors is well taken and that the sustaining of defendant-appellee's motion under Rule TR. 50 was reversible error and that this cause be, and the same is, hereby in all things reversed and remanded to the trial court for a new trial.

Robertson, P.J., concurs; Lybrook, J., dissents with opinion.

### DISSENTING OPINION

LYBROOK, J.—I cannot agree with the majority opinion and must respectfully dissent. Although it attempts to reach a fair result, I cannot subscribe to its reasoning.

This case is clearly decided by a statute enacted in 1933, IC 28-1-11-11; Ind. Ann. Stat. § 18-1111 (Burns 1964 Replacement). This was the law of Indiana for 39 years until the issuance of the majority opinion herein. Perhaps it didn't de-

serve to be the law all those years, but for what it was worth and while it lasted, it read as follows:

> "Any bank or trust company shall have power to receive, upon terms and conditions to be prescribed by such corporation, not inconsistent with the provisions of this sections [section], upon deposit for safe-keeping, or in escrow, moneys, bonds, mortgages, jewelry, plate, stock, securities and valuable papers of any kind, and other personal property for hire, and to rent or lease receptacles for safe deposits of personal property. *No bank or trust company nor any of the assets thereof shall be liable, for the value of any property received by it pursuant to the power conferred by this section nor for damages for the loss, theft or misappropriation thereof.* Any bank or trust company *may* procure and carry a policy or policies of insurance for the benefit of the owners of any property received by it pursuant to the power conferred by this section. [Acts 1933, ch. 40, § 180, p. 176.] (Emphasis added)

The plaintiff failed to make a case of actionable fraud in my judgment. As to Paragraph I if we assume that there was evidence from which the jury could have properly found that the defendant bank was negligent, still plaintiff cannot recover. The statute unequivocally bars recovery in plain and unmistakable language.

An analysis of the statute reduces it to three essential parts.

(1) A bank may receive and rent space for deposits of personal property.
(2) The bank is relieved of liability for loss of the same.
(3) The bank *may* carry insurance for the benefit of the owners of the property.

In the case at bar the bank did not carry insurance for the benefit of the property owner. The policy in question only protected its named assured, the bank. It is immaterial whether this policy is one of liability or indemnity. The bank was *not required* to carry insurance of any particular type or for that matter required to carry insurance at all. It we hold that the Banker's Blanket Bond protects the loss of each

customer then the carrier has acquired a large number of new assureds without the pleasure of receiving their premium.

From a reading of this statute it is obvious that the last sentence relative to insurance, contains no language which could possibly affect the bank's liability in any way. The clear mandate of the act is that the bank is not liable. Nothing appears therein to the contrary.

Admittedly, where a statute is vague and ambiguous the court has the duty to interpret it in such a manner as to give it meaning. Conversely, a statute which has a clear meaning needs no interpretation. See 26 I.L.E., *Statutes* § 116, page 319, which reads in part as follows:

> "A court considering a statute which is unambiguous and which clearly expresses the intention of the Legislature has no right to say that the Legislature did not mean what in plain language it said and must give effect to such intention regardless of the consequences. Effect must be given to a statute in accordance with the plain and manifest meaning of the language used in the statute, even though it results in injustice or in harsh and unjust consequences."

When the meaning of a statute is plain and unambiguous there is no room for judicial construction. *State ex rel. Mason* v. *Jacobs* (1924), 194 Ind. 327, 142 N. E. 715.

Where the language of a statute is clear and unambiguous, it must be held to mean what it plainly expresses. *Cheney* v. *State ex rel.* (1905), 165 Ind. 121, 74 N. E. 892. *Reome* v. *Edwards* (1948), 226 Ind. 229, 79 N. E. 2d 389. *Piersol* v. *Hays* (1943), 113 Ind. App. 214, 47 N. E. 2d 838.

Even where the application of a statute seems harsh and unjust this does not authorize the court to change its plain provisions. *Boryczka* v. *Boryczka* (1928), 87 Ind. App. 511, 161 N. E. 830.

Appellant contends that he proved a bailment relationship between the parties. Assuming this contention is true, the

relationship is nevertheless subject to (1) the above statute and (2) the agreement of the parties.

In its first sentence the statute provides:

"Any bank or trust company shall have the power to receive, *upon terms and conditions to be prescribed by such corporation, not inconsistent with the provisions of this sections* (sic) . . ." (Emphasis supplied.)

This power in the statute leads us to (2) the agreement of the parties. It is undisputed that over the years plaintiff attached his signature to five separate identical cards prior to this loss, at the top of which in prominent capital letters appeared:

"RULES AND REGULATIONS BY WHICH EACH RENTER WILL BE GOVERNED."

and below which the following appeared above appellant's signature:

"I. Whenever a party rents a safety deposit box and deposits therein at pleasure, contents not being known to Peoples Loan & Trust Co., its liability is limited.
[a] To the prevention of access by any renter to the box of any other renter.
[b] To the protection of box and contents from any dishonesty on the part of the employees of Peoples Loan & Trust Co."

The statute authorized the bank to prescribe the terms and conditions set forth above. We believe plaintiff was bound by them.

I concur with both parties and the trial judge in the sincere belief that this statute produces a harsh result. Conceding this to be true is simply another way of saying it badly needs the further attention of the Legislature. The statute bars recovery for loss of articles placed in a safe deposit box.

The majority opinion amounts to a "judicial repeal" and permits recovery. When statutes become old and tired, their

final rites should be conducted by the General Assembly—not the judiciary.

Do we have the right to hold that this statute doesn't mean what it says? I think not.

Trial Judge Ratliff was absolutely correct when he said for the record: "Now, I think in this particular case that the application of this statute leads to a harsh result, but I think the statute, in its language, is plain. I think it leads inescapably to this conclusion, whether it be desirable or not." When he took this case from the jury he did so in the exercise of his sworn duty to follow the law. Therefore I would affirm, not reverse him.

NOTE.—Reported in 283 N. E. 2d 544.