**FIFTH THIRD BANK, Indiana, Appellant,**

v.

**Gloria STANEK, Appellee.**

**No. 49A02–0308–CV–741.**

Court of Appeals of Indiana.

April 26, 2004.

Alan K. Mills, Edward A. Keirn, Wendy D. Brewer, Barnes & Thornburg, Indianapolis, IN, Attorneys for Appellant.

Gary P. Price, Todd A. Richardson, Mathew S. Tarkington, Lewis & Kappes, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Appellant Fifth Third Bank, Indiana ("Fifth Third") brings this interlocutory appeal from the trial court's denial of its motion for judgment on the pleadings pursuant to Indiana Trial Rule 12(C). We affirm.

### Issue

The issue on appeal is whether the trial court properly denied Fifth Third's motion for judgment on the pleadings.

### Facts and Procedural History

This case arises out of the theft of a coin collection owned by Appellee Gloria Stanek ("Stanek") and stored in a safe deposit box at Fifth Third's safe deposit box facility located in Indianapolis, Indiana. On April 2, 1999, Stanek executed a safe deposit box lease agreement ("the lease agreement") with Fifth Third. In exchange for valuable consideration, Fifth Third agreed to provide the use of a safe deposit box and to exercise reasonable care in the protection of Stanek's valuables. Specifically, the lease agreement provided:

THE SOLE DUTY OF FIFTH THIRD IS TO EXERCISE REASONABLE CARE TO PREVENT THE OPENING OF THE SAFE DEPOSIT BOX ("BOX") BY ANYONE OTHER THAN

THE LESSEE OR A DULY QUALIFIED LEGAL REPRESENTATIVE OF LESSEE. FIFTH THIRD SHALL NOT BE LIABLE FOR ANY LOSS BY FIRE, THEFT, BURGLARY, ROBBERY, EMBEZZLEMENT, OR ANY OTHER CAUSE UNLESS FIFTH THIRD HAS FAILED TO EXERCISE REASONABLE CARE TO PREVENT THE AFOREMENTIONED OCCURRENCES.

Appellee's App. at 46.

On April 25, 2002, a man later identified as Rodney Smith burglarized Stanek's home. Smith stole, among other things, the keys to Stanek's safe deposit box at Fifth Third. That same day, Smith went to Fifth Third and approached Melissa Meyer, a Fifth Third customer service representative. Meyer determined which safe deposit box Smith wished to enter by examining the key. Meyer then retrieved the safe deposit box access card, which listed Stanek and her daughter, Jean Neely, as the only people authorized to access the safe deposit box, but nonetheless gave Smith the card to sign. Smith signed the name "John Stanek" and was allowed access to the safe deposit box. Contrary to Fifth Third's normal office protocol, Meyer did not ask Smith for identification, nor did she crosscheck the name Smith signed with the list of authorized names on the access card. Smith took most of the contents of the safe deposit box, including the coin collection, and left the bank.

Stanek did not learn of the theft of the safe deposit box key until sometime after Fifth Third had closed for business on April 25, so, it was not until the following morning that she went to Fifth Third to report the theft of her box key. While at Fifth Third, Stanek spoke with office manager Allyson Ferley, who examined the access card and told Stanek that no one had accessed the box. Ferley then informed Stanek that she would place a "post-it" note on the access card to prevent any future access and would make arrangements for the box to be drilled because access to the box without the key was impossible.

On May 9, 2002, the safe deposit box was drilled, opened, and found to be empty. However, inside the vault Stanek discover a metal box containing a few pieces of paper with her deceased husband's handwriting and a few empty plastic containers that once held part of the now missing coin collection. A police report was immediately filed with the Marion County Sheriff's Department. The coin collection was never recovered.

On November 27, 2002, Stanek filed a complaint against Fifth Third alleging, *inter alia*, breach of contract and failure to exercise reasonable care in fulfilling its obligations to Stanek under the terms of the lease agreement. Subsequent to the filing of its answer and affirmative defenses, Fifth Third filed a motion for judgment on the pleadings based on Indiana's Safe Deposit Box Statute. The trial court denied Fifth Third's motion. This interlocutory appeal ensued.

### Discussion and Decision

This interlocutory appeal questions the trial court's order denying Fifth Third's motion for judgment on the pleadings. A Trial Rule 12(C) motion attacks the legal sufficiency of the pleadings. *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 661 (Ind.Ct.App.2002), *trans. denied.* A motion for judgment on the pleadings will not be granted unless it is clear from the face of the complaint that under no circumstances could relief be granted. *Id.* Because we accept the allegations of the complaint and the reasonable inferences arising therefrom as true in such cases, only questions of law, and whether the trial court has correctly applied the law,

concern us. *First Nat'l Bank of Danville v. Reynolds,* 491 N.E.2d 218, 220 (Ind.Ct. App.1986), *trans. denied.* Our standard of review for a trial court's ruling on a Trial Rule 12(C) motion is *de novo. Id.*

Fifth Third argues that Indiana's Safe Deposit Box Statute shields it from all liability resulting from the loss, theft, or misappropriation of any property it received from Stanek pursuant to the statute, regardless of its own fault or culpability in the loss. In support of this contention, Fifth Third directs our attention to Indiana Code Section 28–1–11–11, which states:

> Any bank or trust company shall have power to receive, upon terms and conditions prescribed by such corporation, not inconsistent with the provisions of this section, upon deposit for safe-keeping, or in escrow, moneys, bonds, mortgages, jewelry, plate, stock, securities and valuable papers of any kind, and other personal property for hire, and to rent or lease receptacles for safe deposits of personal property: *No bank or trust company nor any of the assets thereof shall be liable, for the value of any property received by it pursuant to the power conferred by this section nor for damages for the loss, theft or misappropriation thereof.* Any bank or trust company may procure and carry a policy or policies of insurance for the benefit of the owners of any property received by it pursuant to the power conferred by this section.

(Emphasis added). Fifth Third argues that under the plain and unambiguous language of this statute, it could not be liable to Stanek. Fifth Third further asserts that courts are not permitted to "judicially construe" an unambiguous statute; and, even if this Court determined that the statute did in fact contain an ambiguity such that "judicial construction" would be proper, the historical and legal background of the enactment of the statute compels a literal application of the statutory language which clearly protects it from any possible liability to Stanek. Appellant's Br. at 4.

Stanek, on the other hand, asserts that the facts contained in her complaint establish that Fifth Third was negligent when it allowed unauthorized access to her safe deposit box. Stanek further asserts that Fifth Third is not entitled to the protection afforded by the Safe Deposit Statute because it failed to act with reasonable care or diligence in ensuring the safety of her property. In support of her argument, Stanek directs our attention to two cases, *Welbourn v. Peoples Loan & Trust Co.,* 152 Ind.App. 337, 283 N.E.2d 544 (1972) and *Parke State Bank v. Akers,* 659 N.E.2d 1031, 1032 (Ind.1996).

In *Welbourn,* Welbourn rented five safe deposit boxes from Peoples Loan and Trust Co. ("the bank") for the purpose of safekeeping his coin collection. Before Welbourn rented the safe deposit boxes, the bank had experienced four break-ins after which Indiana State Police detectives advised the bank of its inadequate safety measures, including flimsy doors, an inadequate combination lock on the vault, and the lack of an alarm. The detectives advised the bank that it should install safety devices consisting of alarms and bars on the vault. The directors of the bank agreed that something should be done as a safety and preventive measure while waiting for permanent safety measures to be completed; however, no precautionary measures were taken and, in the meantime, Welbourn's $12,000.00 coin collection was stolen during yet another break-in at the bank.

In rejecting the bank's argument that the Safe Deposit Box Statute was clear, unambiguous, and broad enough to

preclude the bank's liability even if it had acted negligently, another panel of this Court stated, "We are of the opinion that the General Assembly, in enacting this statute, intended it to protect the bank that had been diligent in the protection and safety of its depository, including safety deposit boxes, which would necessarily be a safeguard to its patrons' property." *Welbourn*, 152 Ind.App. at 343, 283 N.E.2d at 548. The *Welbourn* court went on to say, "It is our further opinion that the members of our General Assembly did not have in mind at the time of enactment of said statute to protect a bank to the exclusion of the benefit of the people of this State." *Id.* at 344, 283 N.E.2d at 548. Thus, *Welbourn* holds that a bank's due diligence is a prerequisite for it to use the Safe Deposit Box Statute as a shield from liability.

Fifth Third argues that *Welbourn*, the only reported appellate decision to date to specifically interpret the Safe Deposit Box Statute, was incorrectly decided and urges us to reject its reasoning. We might be inclined to consider doing so if our supreme court had not recognized the viability of a breach of contract claim in a similar situation in *Parke State Bank*.

In *Parke State Bank*, Akers instructed the bank to add Ardith, his new wife, as a joint tenant with rights of survivorship, on four certificates of deposit that Akers held in a safe deposit box rented from the bank. On the same day, Akers further instructed the bank to name Ardith as a co-lessee of the safe deposit box, with the same right to access the box as Akers. In so doing, the bank provided a written contract describing the terms of the box lease agreement, which provided in relevant part:

1. Unless otherwise agreed in writing, a Safe leased by two or more persons shall be held by them jointly and severally, and either of them, or their du[l]y appointed deputy without consent of any of them, is entitled to separate access to the Safe and may take possession and remove all or any part of its contents[.] ... [.]

5. A deputy may be appointed in writing in such form and manner approved by the Bank, but *no renter may appoint a deputy without the consent of the other renter(s)*. (Emphasis added).

*Parke State Bank*, 659 N.E.2d at 1033. The certificates of deposit remained in the box until five years later when Akers, who had been diagnosed with cancer and was in the hospital for treatment, called the bank's president and advised him that he wanted his daughter, Deborah Hopkins, to have access to the safe deposit box. The bank president told Akers that he need only provide Hopkins with written authorization for her to enter the box, which Akers provided. Hopkins then presented the written authorization to the bank and was permitted to enter the box and remove the four certificates of deposit. Akers, while still in his hospital room, endorsed the certificates, which Hopkins returned to the bank and exchanged the proceeds, at Akers direction, for checks made out to herself and two of her children. The bank never sought, and Ardith never gave, approval of Akers' selection of Hopkins as a deputy authorized to enter the box. When Akers died, Ardith learned that Hopkins had removed the certificates of deposit and received the proceeds. Ardith thereafter filed suit against the bank under breach of contract and negligence theories.

Our supreme court did not mention the Safe Deposit Box Statute in reversing this Court and affirming the trial court's award of damages to Ardith. Instead, it resolved the issue based on breach of contract principles. In allowing Ardith to recover damages under a breach of contract theory,

our supreme court recognized the existence of a breach of contract cause of action against a bank where the bank has contractually obligated itself to exercise reasonable care to prevent the loss of its customers' property held in safe deposit boxes, notwithstanding the language of the Safe Deposit Box Statute.

■ As stated earlier, a motion for judgment on the pleadings cannot be granted unless it is clear from the face of the complaint that *under no circumstances* could relief be granted. In light of *Parke State Bank,* and unless we receive further guidance from our supreme court, we are constrained to find that when, as here, a bank freely negotiates a contract wherein it contractually obligates itself to use reasonable care in the safekeeping of its customers' property, the Safe Deposit Box Statute does not automatically shield it from all liability. Accordingly, we conclude that the trial court properly denied Fifth Third's motion for judgment on the pleadings.

Affirmed.

MATHIAS, J., and BARNES, J., concur.