In the Matter of the George H. EDWARDSON REVOCABLE TRUST,

Jeri Iannetta, Individually and as Co–Trustee of the George H. Edwardson Revocable Trust, Appellant–Defendant,

v.

George Stephen Edwardson, Individually and as Co–Trustee of the George H. Edwardson Revocable Trust, Appellee–Plaintiff.

No. 87A01–1009–TR–501.

Court of Appeals of Indiana.

May 27, 2011.

Charles L. Martin, Martin & Martin, Attorneys at Law, P.C., Boonville, IN, Attorney for Appellant.

John A. Hamilton, Evansville, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

George H. Edwardson created a trust that was divided among his three children—George Stephen Edwardson ("Edwardson"), Jeri Iannetta ("Iannetta"), and Jane Mack ("Mack")—upon his death. Edwardson and Iannetta received immediate distributions, but Mack's share was to continue to be held in trust by Edwardson and Iannetta. Edwardson and Iannetta were to receive equal shares of any funds left over upon Mack's death. At some point, Iannetta moved the trust assets from Indiana to Maine. After Mack's death, Edwardson did not receive his share of Mack's trust funds. Edwardson filed a complaint in Warrick Circuit Court seeking damages for breach of trust and an accounting. Iannetta filed a motion to

dismiss and a motion for judgment on the pleadings, contending that jurisdiction was in Maine rather than Indiana. The probate court denied her motions and certified its order for interlocutory appeal. We accepted jurisdiction, and finding no merit in Iannetta's arguments, we affirm the ruling of the probate court.

## Facts and Procedural History

On September 1, 2004, George H. Edwardson established the George H. Edwardson Revocable Trust ("Trust"). On the same day, he executed a will, which provided that any probate assets be transferred to the Trust. He passed away on July 28, 2005. At that time, the trust assets were divided among his three children, Edwardson, Iannetta, and Mack. Edwardson and Iannetta each received an immediate distribution of one-third of the Trust assets. The remaining third was to continue to be held in trust for Mack, who was unable to care for herself. Edwardson and Iannetta were co-trustees of Mack's Trust funds.

On May 2, 2006, Iannetta moved from Indiana to Maine. On June 30, 2005, Iannetta and her husband filed a petition for guardianship of Mack in the probate court of Piscataquis County, Maine. According to the petition, Mack was residing in a nursing home in Greenville, Maine at that time. On July 6, 2006, Edwardson signed a document waiving further notice of the guardianship proceedings. Iannetta and her husband were made guardians of Mack's person on September 5, 2006.

Mack passed away in 2008. At that time, any funds remaining in trust were to be distributed equally between Edwardson and Iannetta. On October 20, 2009, Edwardson filed a complaint against Iannetta in Warrick Circuit Court. Edwardson alleged that Iannetta had wrongfully moved Trust assets to Maine without his consent, made distributions to herself, and failed to distribute his share of the assets or provide an accounting. Edwardson sought an accounting and damages for breach of trust.

A hearing was held on February 4, 2010. Iannetta did not appear for the hearing, and that same day, the court ordered her to return $187,889.03 in assets to the Trust. On February 24, 2010, Iannetta filed a motion to vacate the February 4 order, and on April 9, 2010, she filed a motion to dismiss Edwardson's complaint, in which she argued that Maine, and not Indiana, had jurisdiction over any issues relating to the Trust.

After a hearing on April 13, 2010, Iannetta was ordered to provide an accounting within thirty days. Thereafter, Iannetta filed another motion to dismiss and a motion for judgment on the pleadings, both of which argued that the court lacked jurisdiction. After a hearing on July 22, 2010, the probate court denied all of Iannetta's pending motions.

On August 23, 2010, Iannetta requested that the probate court certify the July 22 order for interlocutory appeal. The court certified the order on September 14, 2010, and we accepted jurisdiction on December 10, 2010.[1]

## Discussion and Decision

■■■ The standard of appellate review for a motion to dismiss for lack of subject matter jurisdiction depends on whether the trial court resolved disputed facts, and if so, whether the court conducted an evidentiary hearing or ruled on a paper rec-

1. In his appellee's brief, Edwardson argues that this appeal should be dismissed because Iannetta did not timely file her notice of appeal. The motions panel of this Court already denied Edwardson's motion, and we decline to reconsider it.

ord.[2] *In re Alford Trust,* 897 N.E.2d 946, 949 (Ind.Ct.App.2008), *trans. denied.* No evidentiary hearing was held in this case; consequently, our review is de novo. *Id.* Review of a ruling on a motion for judgment on the pleadings is also de novo. *Fifth Third Bank v. Stanek,* 806 N.E.2d 861, 864 (Ind.Ct.App.2004), *trans. denied.* "A motion for judgment on the pleadings will not be granted unless it is clear from the face of the complaint that under no circumstances could relief be granted." *Id.* at 963.

■ Iannetta argues that two provisions of the Indiana Trust Code divest Indiana of jurisdiction under the circumstances of this case: Indiana Code Sections 30–4–6–2 and 30–4–6–4(2). Section 30–4–6–2 provides: "The court will have continuing jurisdiction to supervise the administration of the trust only if the settlor expressly directs in the terms of the trust that the court is to have that jurisdiction." Section 30–4–6–4(2) provides:

> [U]nless the terms of the trust expressly direct that the court is to have continuing jurisdiction over the administration of the trust ... with respect to a decedent's estate docketed for the purpose of probate or administration, which either establishes a trust or makes a devise to another trust, the court shall have no

continuing jurisdiction over the administration of the trust after any distribution from the estate is paid or delivered to the trustee.

Edwardson argues that neither of these provisions applies to his action for breach of trust or an accounting.

The parties appear to agree that the Trust contains no provision for continuing jurisdiction. Therefore, the jurisdiction that the court exercised during the probate proceedings did not *continue* after the distribution was made from the estate to the Trust. We agree with Edwardson that, although jurisdiction did not exist by the mere fact that the Trust was involved in the probate case, a court may still obtain jurisdiction when a breach is alleged. The purpose of the provisions in Chapter 30–4–6 to which Iannetta cites simply establish that trusts will not be supervised by a court unless the trust explicitly provides otherwise; in other words, the default rule is that trustees may act in their own discretion without prior court authorization. *See Adler v. Adler,* 713 N.E.2d 348, 353 n. 1 (Ind.Ct.App.1999) (trusts are generally administered without continuous court intervention and trustee may perform necessary acts without court authorization).

---

**2.** Iannetta's brief does not cite a standard of review, but her pleadings state that the probate court lacked subject matter jurisdiction. Edwardson's brief provides the standard of review for a ruling on a motion to dismiss for lack of subject matter jurisdiction, citing to *Alford Trust.* In *Alford Trust,* the majority determined that Virginia, rather than Indiana, had jurisdiction over an action to remove a trustee because the trust had been continuously administered in Virginia. In dissent, Judge Brown asserted that the pertinent statutes—Indiana Code Sections 30–4–6–4 and 30–4–6–2—"do not fit within the category of subject matter jurisdiction or personal jurisdiction," even though they purport to limit

the probate court's jurisdiction. *Alford Trust,* 897 N.E.2d at 952 (Brown, J., dissenting). Instead, she asserted that these statutes "fall within what was formerly described as jurisdiction over the particular case," a concept that our supreme court has found to be a "misnomer." *Id.* at 952 n. 2. Iannetta relies on these same statutes, but neither party addresses whether this case is correctly classified as a case about subject matter jurisdiction. Regardless, the issues before us are questions of law, and our review is de novo. *See Marion–Adams School Corp. v. Boone,* 840 N.E.2d 462, 468 n. 6 (Ind.Ct.App.2006) (pure question of law is subject to de novo review).

Remedies for various claims relating to trusts are all contained in a separate chapter of the Trust Code, Chapter 30-4-3. *See* Ind.Code §§ 30-4-3-15 (remedies of trustee against third persons); 30-4-3-16 (remedies among co-trustees); 30-4-3-17 (remedies of trustee against beneficiary); 30-4-3-18 (other remedies of the trustee); 30-4-3-21 (remedies of beneficiary against third persons); 30-4-3-22 (remedies of the beneficiary against the trustee); and 30-4-2-23 (remedy of a beneficiary against a co-beneficiary). The statute that appears to be most directly applicable to this case is Indiana Code § 30-4-3-16, which provides:

> Any trustee may maintain an action against a co-trustee to:
> (a) compel him to perform his duties under the trust;
> (b) enjoin him from committing a breach of trust; or
> (c) compel him to redress a breach of trust committed by him.

This section creates an action for a trustee against a co-trustee and is itself authority for a probate court to exercise jurisdiction in such a case.

We do not believe that Indiana Code Sections 30-4-6-2 and 30-4-6-4(2) limit the court's jurisdiction over actions for breach of trust, as Iannetta contends. To interpret the Trust Code in the manner that she suggests would mean that the only way a settlor could protect beneficiaries from an unscrupulous trustee would be to explicitly require ongoing court supervision. We do not believe that the legislature intended this all-or-nothing approach. In fact, the Trust appears to contemplate that, although there would not be ongoing court supervision, there would still be a remedy for breach or an accounting. *See* Appellant's App. at 24 ("No trustee shall be required to give any bond as trustee; to qualify before, be appointed by or *in the absence of breach of trust* to account to any court; or to obtain the order or approval of any court in the exercise of any power or discretion.") (emphases added); *id.* at 25 ("The trustee shall not be required to file accountings with any court *except upon the request of a then income beneficiary,* and shall not be required to obtain authority from or confirmation by any court of any of its acts, doings, or proceedings thereunder.") (emphases added).

■ In her reply brief, Iannetta argues that Edwardson is not entitled to the remedies of a trustee because he is a beneficiary and not a trustee. This argument is without merit because a person may be both a beneficiary and a trustee, Ind.Code § 30-4-1-1(b), and beneficiaries have the same remedies as co-trustees. *Compare* Ind.Code § 30-4-3-16 *with* Ind.Code § 30-4-3-22.

■ Iannetta believes that her unilateral decision to move the trust assets to Maine divests Indiana of jurisdiction. In support, she cites *Alford Trust.* In that case, the majority held that Indiana lacked jurisdiction over an action for the removal of a trustee of a trust that was—and had always been—administered in Virginia. *Alford Trust,* 897 N.E.2d at 950. In addition, because the trust was administered in Virginia, Virginia law applied. *Id.* Iannetta does not contend that she had Edwardson's consent to move the trust funds to Maine; instead, she appears to believe that Edwardson ceased to be a co-trustee when he acquiesced to Iannetta's guardianship of Mack. Guardian of a person and trustee of assets are separate functions, and there is nothing in the record that suggests that Edwardson ever ceased to be a trustee. Both the Trust and Indiana law provide that the two trustees must exercise their power jointly. Appellant's

App. at 47; Ind.Code § 30–4–3–4. The only reason that the Trust assets are in Maine is that Iannetta wrongfully removed them from Indiana. Therefore, this case is distinguishable from *Alford* in that the trust instrument in that case provided that Virginia law governed the administration of the trust, whereas in this case the Trust provides that it "shall be construed and regulated . . . by the law of Indiana" and the Trust assets should have remained in Indiana. Iannetta has not established that the probate court misinterpreted the Indiana Trust Code. Therefore, we affirm.

Affirmed.

NAJAM, J., and ROBB, C.J., concur.