**ATTORNEYS FOR APPELLANT**
COCA COLA COMPANY
Gary P. Price
Peter S. French
Matthew S. Tarkington
Lewis & Kappes, P.C.
Indianapolis, Indiana

**ATTORNEYS FOR APPELLANT**
COCA COLA ENTERPRISES INC.
Kent M. Frandsen
Carol Sparks Drake
Parr Richey Obremskey
    & Morton
Lebanon, Indiana

**ATTORNEYS FOR APPELLEE**
BABYBACK'S INTERNATIONAL, INC.
Marvin Mitchell
Richard J. Dick
Stephen P. Kenley
Mitchell Hurst Jacobs & Dick, LLP
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 49S02-0408-CV-380

THE COCA-COLA COMPANY, AND
COCO-COLA ENTERPRISES INC.,                     *Appellants (Defendants below),*

HONDO, INCORPORATED D/B/A COCA-COLA BOTTLING COMPANY
        INDIANAPOLIS, A/K/A COCA-COLA BOTTLING
        COMPANY INDIANAPOLIS, INC.,              *(Defendant below),*[1]

v.

BABYBACK'S INTERNATIONAL, INC.,                 *Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49D03-0101-CT-62
The Honorable Patrick L. McCarty, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0308-CV-703

**February 1, 2006**

**Dickson, Justice.**

This opinion centers on the enforceability of an alleged business agreement reflected in a memo prepared and faxed by one party to another. The trial court denied separate motions for

---

[1] This defendant, Hondo, Incorporated, is not seeking relief on appeal and has not filed a brief as appellant or appellee. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

summary judgment filed by each of the three defendants, but certified its order for interlocutory appeal for two of the defendants. As to its denial of the motion for partial summary judgment filed by defendant Coca-Cola Enterprises Inc. ("CCE"), the trial court's certification order described the "fundamental issue" as:

> whether a legally sufficient written contract was signed for the alleged national co-marketing agreement to satisfy the requirements of Indiana's Statute of Frauds. . . . If an adequate writing is determined to not exist, a question of law remains whether the equitable doctrines of part performance or promissory estoppel can support plaintiff's claims for lost future profits. If an adequate writing is determined to exist, these alternative positions of plaintiff need not be litigated.

Appellants' Joint App'x. at 762. With regard to defendant Coca-Cola Company ("Coke USA"), the certification order stated that "the issue is whether Coke USA's efforts to protect its property interests were justified as a matter of law, thereby precluding plaintiff's [tortious] interference claims." *Id.*

The Court of Appeals accepted the interlocutory appeals and affirmed the trial court. Coca-Cola Co. v. Babyback's Int'l, Inc., 806 N.E.2d 37 (Ind. Ct. App. 2004). We granted transfer and now reverse the denial of CCE's motion for partial summary judgment as to the issues described in the trial court's certification order. With respect to Coke USA's motion, we summarily affirm the decision of the Court of Appeals, which affirmed the trial court's denial of summary judgment. Ind. Appellate Rule 58(A)(2).

This business controversy arises from a complaint by Babyback's International, Inc., presenting various claims for relief. The underlying facts are not in dispute. Early in 1997, Babyback's, a processor and seller of barbeque meat products, entered into an agreement with Hondo, Incorporated, d/b/a Coca-Cola Bottling Company Indianapolis, a/k/a Coca-Cola Bottling Company of Indianapolis, Inc. ("Coke Indy"), a bottler of Coca-Cola products with its main office in Chicago, and its market area including Indianapolis. Under this agreement, Coke Indy was to pay Babyback's to arrange for and prominently place coolers in grocery stores in and around Indianapolis, displaying Babyback's products side-by-side in the coolers with Coca-Cola products. After Babyback's and Coke Indy experienced success with this "meals to go" concept in Indianapolis, CCE and Babyback's began discussions about similarly co-marketing their products in the Louisville market, which was outside the Coke Indy territory but within that of CCE. Baby-

2

back's thereafter arranged to have coolers delivered to several Louisville area grocery stores. At this time, Babyback's and CCE did not have a written contract regarding this arrangement. Babyback's and CCE representatives met on October 24, 1997, to discuss further expanding the arrangement into other CCE market areas. Following this meeting, Babyback's faxed to CCE a proposed contract. This contract, however, was never signed. On November 18, 1997, Babyback's and CCE representatives met again, this time at CCE's Atlanta headquarters, to discuss expanding their co-marketing arrangement to stores on a nationwide basis. Following the November 1997 Atlanta meeting, a representative of CCE drafted and faxed to Babyback's a memo, which Babyback's contends summarizes the parties' oral agreement to co-market their food and drink products in mutual coolers in stores in Atlanta and across the nation. Babyback's claim asserts that CCE breached the agreement when it refused to perform under the purported terms, refused to pay allegedly agreed-upon up-front fees, and denied the existence of a contractual relationship between the parties.

CCE contends on appeal that its motion for partial summary judgment should have been granted because the multiple-year agreement alleged by Babyback's is unenforceable under the Statute of Frauds because it could not be performed within a year and no written contract was ever signed by the parties. CCE argues that the faxed memo following the November 1997 meeting is insufficient to satisfy the statute because it fails to contain the essential terms of a contract, and further, because it shows that no agreement was reached. Finally, CCE asserts that there is no evidence supporting an adequate substitute for a writing in the form of part performance or based upon a theory of estoppel.[2]

Babyback's responds that the trial court properly denied CCE's motion for partial sum-

---

[2] On appeal, as well as in the trial court on its summary judgment motion, CCE argued that it was entitled to summary judgment on various other claims filed by Babyback's, including claims for breach of fiduciary duty, constructive fraud and bad faith, and misappropriation of the Babyback's co-marketing concept. These were not among the issues certified for interlocutory appeal. We also note that, in its original motion for partial summary judgment and throughout this interlocutory appeal, CCE has conceded that "to the extent any promises CCE made are unenforceable because of the lack of a writing, to prevent unjust enrichment the law will *imply* that a contract existed to the extent [Babyback's] actually performed work thereunder beyond the extent to which it has already been paid." Br. of Appellant at 27-28; *see also* CCE's Memorandum in Support of its Motion for Partial Summary Judgment at 22-23, Appellants' Joint App'x. at 213-14.

3

mary judgment because of the existence of genuine issues of determinative fact regarding whether the faxed memo was sufficiently comprehensive and evinced the parties' intention to contract. Alternatively, Babyback's asserts that the Statute of Frauds should not apply to bar enforcement of the parties' agreement because of (a) Babyback's part performance, (b) promissory estoppel, (c) constructive fraud, and (d) an oral agreement to memorialize in writing within one year. Because the trial court's certification of this interlocutory appeal did not include the latter two alternative arguments, its denial of summary judgment thereon is not considered in this appeal.

We review the denial of CCE's motion for partial summary judgment using the same standard as that used in the trial court: the party seeking summary judgment must show "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Ind. Trial Rule 56(C); Fraternal Order of Police, Lodge No. 73 v. City of Evansville, 829 N.E.2d 494, 496 (Ind. 2005); Allen v. Great Am. Reserve Ins. Co., 766 N.E.2d 1157, 1161 (Ind. 2002). All facts and reasonable inferences therefrom are construed in favor of the nonmoving party. Bank of N.Y. v. Nally, 820 N.E.2d 644, 648 (Ind. 2005); Allen, 766 N.E.2d at 1161.

**Statute of Frauds Writing Requirement**

This case centers on the application and requirements of the Indiana Statute of Frauds, which provides in relevant part:

> A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:
>
> * * *
>
> (5) An action involving any agreement that is not to be performed within one (1) year from the making of the agreement.

Ind. Code § 32-21-1-1(b). It is undisputed that the alleged agreement is one that could not be performed within one year. And CCE's invocation of the Statute of Frauds does not claim a lack of signature. Rather, CCE claims that the faxed memo fails to contain the essential terms of the contract sufficient to satisfy the statute's requirement of a writing and that the memo demon-

4

strates that "no agreement had in fact been reached." Brief of Appellant CCE at 12. To satisfy the Statute of Frauds, either the agreement sought to be enforced must be in writing, or there must be "a memorandum or note describing the promise, contract, or agreement." Ind. Code § 32-21-1-1(b). Whether the undisputed language of a document constitutes a contract is a question of law. Orr v. Westminster Village North, Inc., 689 N.E.2d 712, 721 n.16 (Ind. 1997); *see also* Gibson County Farm Bureau Co-op Ass'n v. Greer, 643 N.E.2d 313, 320 (Ind. 1994) (holding that whether a document is sufficient to satisfy the writing requirement for a valid security agreement under Ind. Code § 26-1-9.1-203 is a question of law).

CCE asserts that the faxed memo of the alleged agreement with Babyback's was insufficient to satisfy the Statute of Frauds because as a matter of law it did not contain the essential terms of the agreement, specifically claiming no indication of a meeting of the minds regarding the commencement date and duration of the program; whether and how much "up-front money" Babyback's was to receive; the identity and location of stores to be involved; and the allocation of responsibilities for advertising, promotion, and delivery and installation of the coolers. Br. of Appellant CCE at 18-19. CCE also emphasizes several passages in the memo indicating that CCE did not intend to agree upon a contract with Babyback's and that the memo only reflected preliminary discussions. Thus, the statute, according to CCE, precludes enforcement of any alleged agreement between the parties in Louisville, where there was clearly no written agreement, as well as in Atlanta, where the only purported writing is the faxed message.[3]

Claiming that the memo was sufficient under the statute, Babyback's refers to content in the memo and its attachments that discuss when the program was to begin, that CCE agreed to pay Babyback's "up front and on an annual basis," that the duration was to be "multi-year," that CCE was to purchase coolers and provide advertising and promotion, and that the parties understood that store identification would occur later. Br. of Appellee at 26-27. And Babyback's dis-

---

[3] The parties disagree on the subject matter of the fax message, CCE describing it as a summary of recent negotiations concerning an agreement to expand the cooler program into Atlanta and nationwide, separate from the oral agreement in Louisville, and Babyback's referring to it as representing a national contract, the negotiation of which originated in Louisville and which became final in the November 1997 meeting in Atlanta. The Court views the evidence in a light most favorable to Babyback's as the non-moving party and proceeds based on the premise that it represents a single agreement first negotiated in Louisville and concluded in Atlanta.

5

putes CCE's claim that the memo demonstrates no contract was formed by pointing to various words and phrases in the memo such as "we do agree," "alliance," and "agreed in principle." *Id.* at 26.

Babyback's also asserts that CCE failed to demonstrate an absence of disputed material facts, referring to its memorandum submitted to the trial court in opposition to CCE's motion for summary judgment, where there are listed twenty-one facts that Babyback's assigns as disputed. *See* Appellants' Joint App'x. at 640-46. CCE does not deny that many facts in this case are in dispute, including several of those listed by Babyback's; however, it also properly observes that these disputed facts are not material to their Statute of Frauds defense.

We note that, notwithstanding the memorialization of numerous details, the memo also specifies various other preliminary details remaining to be resolved. More importantly, the specific language and overall tenor of the memo unequivocally establish that no final agreement had been reached between CCE and Babyback's.

The fax CCE sent to the plaintiff following the November 18, 1997, meeting was prepared by Dan Marr of CCE and addressed to Phillipe Rouas, the President of Babyback's International. The first page of the fax contained a memo, which stated:

> We enjoyed our meeting yesterday with you and believe *we have made further strides toward coming to agreement* on a 'quiet' partnership with your company. *Your objectives however to have absolute agreement by Friday may be difficult to achieve.* Nonetheless, *we will move as quickly as possible given the complexities which must be worked through.* As we have stated several times, we do agree that the complimentary merchandising of Babyback's with the #1 brand in the world, Coca-Cola, does make sense.
>
> Attached is a recap on the discussion yesterday and also a copy of the directive sent out by Kroger – Atlanta to its stores. You will note, as did we, that *the communication is a nice recommendation to the store managers, but certainly falls well short of being a mandate.* We are concerned that the memo does not indicate to the stores that they must maintain placement of the cooler for any length of time.

Appellants' Joint App'x. at 709 (emphasis added). As the memo indicated, attached to it was a recap of the topics covered in the meeting earlier that day. The recap described that those in attendance at the meeting included Rouas, Marr, and two other CCE representatives. It then listed the following:

6

- Conversation only pertains to CCE and Babyback's, not [Coke USA]. Phillipe should continue his dialogue and maintain his contacts with [Coke USA].
- We discussed the need for our CCE divisions to be consulted up front by Babyback's regarding priority accounts which should be targeted in their respective markets. While we are interested in chain supermarkets and other high trafficked accounts, we are not inclined to support placements in small stores.
- CCE needs/prefers signed customer agreements to justify payment and placement. In the absence of such a document from the customer, we would expect an equivalent document from Babyback's. *Our legal department will need to advise and recommend on this point*.
- Provided above security is in order, CCE will pay Babyback's up front on an annual basis. These payments will be made against placements which are certain to become reality within an agreed amount of time, likely 15 days.
- In the event an account terminates the placement of the cooler before the completion of our prepaid term, CCE will expect prorated return of the prepayment from Babyback's.
- In no case will CCE be expected to pay twice for a single placement within a store. Our understanding is that Babyback's will handle all retailer funding against these units.
- The coolers are to be entirely incremental to a store, and never a replacement or substitute for an existing CCE cooler.
- Though we cannot force or commit nationally to media spending against this alliance, our local markets will be encouraged to work with you to promote the concept via available promotional means. e.g. radio, outdoor, payroll couponing, etc.
- Merchandising of the coolers must allocate 1 full door to Babyback's products, and 1 full door to CCE products. At no time are the 2 product types to be merchandised together in the same door.
- It is our understanding that Babyback's is significantly enhancing production capacity, upwards to 10 times present ability, or 200m + pounds/week.
- We understand that Babyback's will employ a Broker network in each market that will manage product quality and rotation.
- Per our conversation today, you are to send to CCE . . . a listing of approximately 2000 stores within the territory of the Eastern Group. The list will provide a date by which the units can be placed. It is further assumed that store contacts have been made by Babyback's to gain store level approval of the cooler.
- We agreed in principle that CCE would pay $600 per year per unit to Babyback's for these 2000 placements. Payment will be made up front on an annual basis in accord with earlier bullet point in this memo.
- Further, it is understood that CCE will not disclose the amount of this funding level to retailers or other bottlers.
- CCE will purchase through 'True Manufacturing' at our costs, existing new inventory which is committed to by Babyback's, or those that are presently in place in CCE markets. . . .
- Finally, after reviewing the above items with our legal counsel and our chief financial officer, it is clear that *we will need an audited financial statement from Babyback's in order to proceed with the transaction*.

*Id*. at 710-11 (emphasis added). CCE also included in the fax message a copy of a memorandum

sent by the Meat Merchandising/Grocery Merchandising division of Kroger Stores to the company's store managers. In it was some instruction to store managers related to the Babyback's-Coca-Cola arrangement, as well as the suggestion that a manager should choose not to authorize the cooler program in a particular store if the cooler could not be placed in a convenient location. *Id*. at 712.

The cover memo, the recap, and the Kroger memo made up the entire fax message and the only writing evidencing the purported agreement between the plaintiff and CCE. Both CCE and Babyback's refer to other correspondence between the parties subsequent to the faxed memo to form arguments related to CCE's intent whether to enter into a contract and with regard to the terms of such an agreement.[4] However, before any of this other evidence may be considered, the threshold issue—whether an agreement was satisfactorily reduced to a writing—must be resolved because an agreement required to be in writing must completely contain the essential terms without resort to parol evidence in order to be enforceable. *See, e.g.*, Ward v. Potts, 228 Ind. 228, 234, 91 N.E.2d 643, 645 (1950); Nat'l By-Products, Inc. v. Ladd, 555 N.E.2d 518, 520 (Ind. Ct. App. 1990).

Considering the totality of the faxed memo and its attachments, we conclude that it establishes that the parties were still in the process of negotiating and had not yet reached a final agreement. For example, the fax cover memo states: "we have made further strides toward coming to agreement;" "[y]our objectives however to have absolute agreement by Friday may be difficult to achieve;" "we will move as quickly as possible given the complexities which must be worked through;" and "[the Kroger manager memo] is a nice recommendation to the store managers, but certainly falls well short." The recap of the parties' meeting attached to the cover memo further includes: "[o]ur legal department will need to advise and recommend;" and "we will need an audited financial statement from Babyback's in order to proceed with the transaction." Appellants' Joint App'x. at 709-711.

_____

[4] The day after the faxed memo, Babyback's faxed to CCE a proposed contract. CCE's Dan Marr responded that "contrary to your cover letter, we have not reached an agreement with your company." Appellants' Joint App'x. at 337 (emphasis in original). Babyback's replied, "Dan, I am fully aware that we do not have a signed contract, but I left our Tuesday meeting with 100% confidence that Skeeter, you and I had reached a verbal agreement." *Id.* at 338.

8

To satisfy the Statute of Frauds, either "the promise, contract, or agreement on which the action is based," or "a memorandum or note describing the promise, contract, or agreement," must be "in writing and signed by the party against whom the action is brought or by the party's authorized agent." Ind. Code § 32-21-1-1(b). The writing proffered by Babyback's, the faxed memo from CCE along with its attachments, does not constitute a promise, contract, or agreement. It merely reflects preliminary negotiations. Nor does it constitute a memorandum or note describing a promise, contract or agreement. To the contrary, the fax establishes that no final agreement had yet been reached. We need not evaluate the parties' claims regarding the presence or absence of specific terms of the alleged agreement because it is clear that the writing constitutes only preliminary negotiations and does not establish that the parties had reached a final contract.

This writing does not satisfy the Statute of Frauds, and thus, unless there remains a genuine issue of determinative fact regarding an exception to the statute, Babyback's may not bring an action involving the alleged multi-year national co-marketing agreement. Ind. Code 32-21-1-1(b)(5).

## Part Performance

Supplementing its contention that enforcement of the alleged agreement fails for lack of an adequate writing under the Statute of Frauds, CCE maintains that it is entitled to partial summary judgment despite Babyback's assertion that the doctrine of part performance removes the agreement from the Statute of Frauds. Babyback's asserts that, even if the faxed memo is insufficient to satisfy the Statute of Frauds, part performance "prevents CCE from escaping its obligations under the National Contract." Br. of Appellee at 30. The "modern rule" of part performance, according to Babyback's is:

> [W]here one party to an oral agreement has partially performed in reliance on the contract and it would be perpetrating a fraud upon him to allow the other party to repudiate the contract, equity removes the agreement from the Statute of Frauds and enforces the contract.

*Id.* at 32 (quoting Tolliver v. Mathas, 538 N.E.2d 971, 976 (Ind. Ct. App. 1989), *criticized on*

9

*other grounds* by <u>Thor Electric, Inc. v. Oberle & Assocs.</u>, 741 N.E.2d 373 (Ind. Ct. App. 2000)).

Babyback's maintains that its conduct in reliance on CCE's promises could only be explained by the existence of a contract, thereby providing evidence normally supplied by a writing of an enforceable agreement. Babyback's argues that application of the part performance doctrine "avoids the harm" that is the concern of the Statute of Frauds, which it describes as the "pitting of one person's word against another's as to the existence of the contract." Br. of Appellee at 32. CCE argues that any evidence of reliance by Babyback's on CCE's alleged promises is immaterial because Indiana law does not recognize part performance as an exception to the Statute of Frauds when the contract is one that cannot be performed within a year.

A considerable body of Indiana case law recognizes that some oral contracts may be excepted from the Statute of Frauds by the doctrine of part performance. But the doctrine has been found to apply only to some of the six types of transactions specifically governed by the subsections of the Statute of Frauds. Ind. Code § 32-21-1-1(b)(1)–(b)(6). For example, <u>Tolliver</u>, cited by Babyback's as expressing the rule on part performance, involved an effort to charge a person upon a promise to answer for the debt of another, invoking subsection (b)(2). And the part performance exception to the Statute of Frauds is frequently noted as applicable in actions involving a contract for the sale of land, otherwise governed by subsection (b)(4). *See, e.g.*, <u>Marathon Oil Co. v. Collins</u>, 744 N.E.2d 474, 478 (Ind. Ct. App. 2001); <u>Perkins v. Owens</u>, 721 N.E.2d 289, 292 (Ind. Ct. App. 1999).

In contrast, however, in actions "involving any agreement that is not to be performed within one (1) year from the making of the agreement," subsection (b)(5) of the Statute of Frauds, the doctrine of part performance has generally been held not to apply. <u>Wolke v. Fleming</u>, 103 Ind. 105, 109-110, 2 N.E. 325, 327-328 (1885); <u>Montgomery Ward & Co. v. Guignet</u>, 112 Ind. App. 661, 673-674, 45 N.E.2d 337, 341-42 (1942); <u>Butler Univ. v. Weaver</u>, 97 Ind. App. 151, 156, 180 N.E. 875, 877 (1933); <u>Bd. of Comm'rs of Clark County v. Howell</u>, 21 Ind. App. 495, 498, 52 N.E. 769, 770 (1899).

Professor Williston expresses the general rule that "an agreement not performable within

10

a year is generally not validated by part performance."  10 WILLISTON ON CONTRACTS § 28:9 (4th ed. 1999); *see also* 6 A.L.R.2d 1053, 1067 ("Generally, the mere part performance of an oral contract not to be performed within a year does not take it out of the operation of the statute of frauds in actions at law.").

CCE also cites cases from many jurisdictions demonstrating this majority approach.  Addendum to Reply Brief of Appellant at 15-16.  Included among those jurisdictions is Florida, where the court rejected a plaintiff's argument that part performance removed an oral multi-year contract from the Statute of Frauds.  Collier v. Brooks, 632 So.2d 149, 153 (Fla. Dist. Ct. App. 1994).  The court considered the purpose of the Statute of Frauds "to intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos," and it concluded that the statute's requirements of a writing signed by the party to be charged "should be strictly construed to prevent the fraud it was designed to correct."  *Id*. at 154 (quoting Yates v. Ball, 132 Fla. 132, 138, 181 So. 341, 344 (1938)).  The court also suggested that as long as the statute can be used to effectuate its purpose, "courts should be reluctant to take cases from its protection."  *Id*. (quoting Yates, 181 So. at 344).  Therefore, part performance, according to the Florida court, would take only oral contracts for transfers of land out of the Statute of Frauds because the proof required for part performance in such cases shows regard for the statute's purpose.  *Id*. at 155.  Such proof would include the payment of consideration, taking of possession, and making of improvements by the transferee with the consent of the transferor.  *Id*. (citing Miller v. Murray, 68 So.2d 594, 596 (Fla. 1953)).  Thus, the court refused to support the plaintiff's claim for damages on an oral multi-year agreement that did not involve a transfer of land.  *Id*. at 158.

Babyback's argues that "if the party alleging the existence of an oral contract that would ordinarily fall within the Statute of Frauds has engaged in conduct that can only be explained by the existence of the contract, the contract is taken out of the statute."  Br. of Appellee at 33.  This approach is similar to that taken in Nelson v. Elway, 908 P.2d 102 (Colo. 1995), in which the Colorado Supreme Court held, "The part performance doctrine will apply if there is part performance of an oral contract which is:  (1) substantial; and (2) required by, and fairly referable to no other theory besides that allegedly contained within the oral agreement."  *Id*. at 108.  The

court cites as the rationale for its conclusion that the conduct constituting the part performance must evidence the existence of some oral agreement. *Id*. at 109.

The part performance doctrine represents an impingement upon the express provisions of the Statute of Frauds. We decline to enlarge that constriction by adopting the minority approach as reflected by the Colorado opinion. The underlying purpose of the Statute of Frauds is "to preclude fraudulent claims that would likely arise when the word of one person is pitted against the word of another." Brown v. Branch, 758 N.E.2d 48, 51 (Ind. 2001); *see also* Perkins v. Owens, 721 N.E.2d 289, 292 (Ind. Ct. App. 1999); Summerlot v. Summerlot, 408 N.E.2d 820, 828 (Ind. Ct. App. 1980). This purpose would be undermined if a party's conduct could form the basis for establishing and enforcing a claimed oral agreement not to be performed within one year simply because the same party's conduct arguably provided the only explanation for the agreement. Such an approach would invite persons to concoct and seek enforcement of fictitious contracts on grounds that the existence of an agreement would provide the only possible explanation for such persons' conduct. In contrast to real estate contracts, where evidence of part performance is relatively clear, definite, and substantial, the nature of evidentiary facts potentially asserted to show part performance of an agreement not performable within one year would be vague, subjective, imprecise, and susceptible to fraudulent application. We choose to retain Indiana's existing rule that the doctrine of part performance may not be used to satisfy subsection (b)(5) of the Statute of Frauds governing contracts not to be performed within one year.

Because the doctrine of part performance is not applicable to exempt oral contracts that cannot be performed within one year, this doctrine does not provide a basis for the trial court's denial of CCE's motion for partial summary judgment.

**Promissory Estoppel**

CCE further supports its claim that the trial court erred in denying its motion for partial summary judgment by asserting that the doctrine of promissory estoppel is not available to Babyback's in this case. CCE contends that promissory estoppel does not remove a case from the Statute of Frauds where the promise allegedly relied upon is the very promise that the statute

requires be in writing, and where the damages allegedly suffered are not so substantial and independent as to constitute unconscionable injury and loss.

Babyback's asserts that promissory estoppel operates to remove the contract from the Statute of Frauds because its damages here are substantial, independent, and unconscionable injury and losses. It identifies "the promise that CCE would perform the National Contract including the advance payment for 2,000 placements" and alleges that this promise was repeated by CCE on several occasions. Br. of Appellee at 34-35; *see also* Plaintiff's Memorandum in Opposition to Coca-Cola Enterprise's Motion for Summary Judgment at 21, Appellants' Joint App'x. at 659 (identifying the promise as "CCE would perform the national contract for 10,000 stores, including the advance payment of $2.4 million for 2,000 placements"). Babyback's alleges that in reliance upon this promise, it engaged in conduct including

> finalizing the agreement with Kroger requiring a $331,000 payment from Babyback's, moving forward with the rollout of coolers in Atlanta, ordering more cobranded coolers from True Manufacturing, making presentations of the cooler program to supermarket chains around the country, and spending $103,000 on advertising in Atlanta in anticipation of reimbursement by CCE.

Br. of Appellee at 25; Appellant's Joint App'x at 659. Babyback's urges that due to its failure to receive advance payment for the 2000 placements, it became unable to pay amounts it owed to grocers for action taken in furtherance of the contract, it lost profits from co-marketing its foods with CCE's products, it lost amounts CCE was to pay it over the life of the contract, and it missed opportunities to pursue similar business relations with CCE's competitors. Babyback's argues that even where the promise relied upon is the same as the one required to be in writing, a case will be removed from the Statute of Frauds when unconscionable injury is inflicted or where an estoppel as been established.

Oral promises that are not enforceable under the Statute of Frauds may nonetheless be enforced under the equitable doctrine of promissory estoppel. Brown, 758 N.E.2d at 51. Prior cases have addressed the "problem" when "it is the very promise which the statute declares unenforceable that the [plaintiffs] assert should remove their claim from the statute's operation." Whiteco Indus., Inc. v. Kopani, 514 N.E.2d 840, 844 (Ind. Ct. App. 1987). In Ohio Valley Plastics v. Nat'l City Bank, 687 N.E.2d 260, 264 (Ind. Ct. App. 1997), the court emphasized as "well-

13

settled authority, that a claim of estoppel or fraud will not operate to remove a case from the Statute of Frauds where the promise relied upon is the very promise that the Statute declares unenforceable if not in writing." As explained in Whiteco:

> Were this not the rule the statute would be rendered virtually meaningless because the frustrated claimant would always assert an oral promise/agreement to defeat by means of estoppel the statute's requirement for a written one. The contest would then concern the credibility of the evidence of an oral promise or agreement. That, of course, is precisely what the statute seeks to avoid.

Whiteco, 514 N.E.2d at 844.

This rule was not reflected in Section 139 of the 1981 Restatement of Contracts (Second), which advocates greater limits upon the Statute of Frauds.

> (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

RESTATEMENT (SECOND) OF CONTRACTS § 139(1). Sub-section (2) then enumerates circumstances significant to the determination of whether such injustice can be avoided.

Indiana courts have declined to embrace § 139, but have recognized the possibility of relief for "injustice" in limited circumstances, while defining it much more narrowly than in § 139. Whiteco, 514 N.E.2d at 845. Quoting Whiteco with approval, this Court has recently reiterated the circumstances under which estoppel may be so applied.

> [I]n order to establish an estoppel to remove the case from the operation of the Statute of Frauds, the party must show [ ] that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss.
>
> In other words, neither the benefit of the bargain itself, nor mere inconvenience, incidental expenses, etc. short of a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss are sufficient to remove the claim from the operation of the Statute of Frauds.

Brown, 758 N.E.2d at 52 (quoting Whiteco, 514 N.E.2d at 845).

The promise explicitly identified by Babyback's as the basis for its claim of promissory

14

estoppel is the alleged promise of CCE to perform the national contract. Babyback's is seeking to obtain the benefit of the precise bargain that is rendered unenforceable by the Statute of Frauds. Under the above quoted rule of <u>Brown</u> and <u>Whiteco</u>, the doctrine of promissory estoppel will thus not apply except as to a "reliance injury so substantial and *independent* as to constitute an unjust and unconscionable injury and loss." *Id.* (emphasis added).

This requirement for "independent" injury and loss is not further explained in <u>Brown</u> or <u>Whiteco</u>. But it appears to mean independent from the benefit of the bargain that would have resulted from the oral agreement unenforceable under the Statute of Frauds. If this is so, the language of <u>Whiteco</u>, as quoted with approval in <u>Brown</u>, may be understood to express that for the promissory estoppel doctrine to limit application of the Statute of Frauds, the reliance injury must be not only (1) independent from the benefit of the bargain and resulting incidental expenses and inconvenience, but also (2) so substantial as to constitute an unjust and unconscionable injury. To separately require such independence from the benefit of the bargain, however, has not to our knowledge been specifically implemented in Indiana case law. And some decisions of the Court of Appeals appear to have granted relief from the Statute of Frauds under the promissory estoppel doctrine without consideration of such a separate requirement that the reliance injury be independent. *See, e.g.*, <u>Hardin v. Hardin</u>, 795 N.E.2d 482 (Ind. Ct. App. 2003), *trans. not sought*; <u>Tincher v. Greencastle Fed. Sav. Bank</u>, 580 N.E.2d 268 (Ind. Ct. App. 1991), *trans. not sought*; and <u>Tipton County Farm Bureau Coop. Ass'n, Inc. v. Hoover</u>, 475 N.E.2d 38 (Ind. Ct. App. 1985), *trans. not sought*.

Resolution of the present case, however, does not require us to further address the requirement of independent reliance injury. While the damages sought by Babyback's may not be independent from the benefit of the bargain, the doctrine of promissory estoppel clearly does not apply here for a separate reason, the clear absence of any genuine issue of determinative fact regarding one of its essential elements—that the alleged promise must induce "reasonable reliance by the promisee." <u>Brown</u>, 758 N.E.2d at 52.

The following facts are undisputed. On the day following CCE's November 17, 1997, faxed memo, the president of Babyback's faxed a letter to CCE declaring that Babyback's was

"taking pride in having reached an agreement with Coca-Cola Enterprises," and to which was attached a "new revised agreement which has been modified with all the changes that we all have agreed." Appellants' Joint App'x at 330-336. But CCE immediately replied the same day with a fax to Babyback's that explicitly stated, "We . . . feel compelled to remind you that contrary to your cover letter, we have <u>not</u> reached an agreement with your company." *Id.* at 337 (emphasis in original). The CCE reply fax proceeded to identify various issues still in dispute, and then stated that CCE would treat Babyback's "proposal with high priority, but unfortunately we will be unable to finalize an agreement with you in the timeframe you have outlined." *Id.*

In light of CCE's immediate and unequivocal denial of the national agreement sought by Babyback's, it clearly was not reasonable for Babyback's to take any actions in reliance upon its belief that CCE had promised to perform the alleged national agreement. On this issue there is no genuine issue of fact. Because the alleged promise of CCE did not induce reasonable reliance by Babyback's, one of the essential elements of the doctrine of promissory estoppel is absent as a matter of law, and the doctrine thus cannot support the denial of CCE's motion for partial summary judgment.

### Conclusion

After denying CCE's motion for partial summary judgment, the trial court certified this interlocutory appeal, specifically identifying three issues for appellate consideration: (1) the sufficiency under the Statute of Frauds of the written memorandum of the alleged national co-marking agreement; (2) the availability of the doctrine of part performance; and (3) the availability of the doctrine of promissory estoppel. *See* Appellants' Joint App'x. at 762. As to each of these issues, we hold that there is no genuine issue of determinative fact and that CCE is entitled to summary judgment as a matter of law. The denial of CCE's motion for partial summary judgment is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

Shepard, C.J., and Sullivan, Boehm, and Rucker, JJ., concur.

16