# HESTON v. DOUGAN.

[No. 7,527. Filed November 15, 1911. Rehearing denied February 16, 1912. Transfer denied December 20, 1912.]

1. LANDLORD AND TENANT.—*Action for Possession.—Denial of Landlord's Title.—Answer.—Sufficiency.*—In an action for the possession of land alleged to be held by defendant as the lessee of plaintiff, an answer alleging title in defendant, denying that the relationship of landlord and tenant existed, and alleging that defendant's signature to the paper relied on by plaintiff as a lease was procured through the misrepresentation and fraud of plaintiff, is not demurrable on the theory that a tenant may not controvert the landlord's title during the existence of the tenancy, since that rule only applies where the relation of landlord and tenant exists and does not control where the existence of such relation is denied. p. 45.

2. APPEAL.—*Review.—Harmless Error.—Ruling on Demurrer.*—Overruling a demurrer to a bad paragraph of answer is harmless, where the matters averred therein are provable under the general denial. p. 45.

3. LANDLORD AND TENANT.—*Action for Possession.—Pleading.—Reply.*—The procedure and pleading in the circuit court, in an action by a landlord against the tenant for possession, follow the procedure in civil cases before justices, and by §1752 Burns 1908, §1463 R. S. 1881, in civil cases before a justice, a replication is unnecessary, so that the action of the circuit court in striking

out plaintiff's reply to a paragraph of answer, in such a proceeding, is not error. p. 46.

4. LANDLORD AND TENANT.—*Action for Possession.—Answer Denying Relation of Landlord and Tenant.—Trial.—Right to Trial by Jury.*—In an action by a landlord against the tenant for possession, the defendant's answer averring that the relation of landlord and tenant never existed, that defendant was the owner of the land, and that the paper relied on by plaintiff as a lease was signed by defendant in reliance on the representations of plaintiff that it was a copy of a lost contract, and in which defendant asked for no affirmative relief, tendered issues provable under the general denial and amounted merely to an argumentative denial, so that the pleadings presented an ordinary action in ejectment, triable by jury. pp. 46, 47.

5. JURY. — *Right to Trial by Jury. — Determination. — Issues.* — Whether an equitable issue is raised so as to prevent the trial of a cause by jury, must be determined from the substantial and material facts averred in the pleadings. p. 47.

6. LANDLORD AND TENANT.—*Action for Possession.—Defenses.—Pleading.—General Denial.*—In an action by a landlord against the tenant for possession, all defenses, legal and equitable, are admissible under the general denial. p. 47.

7. EVIDENCE.—*Conclusion of Witness.*—Where, while testifying as a witness with reference to the execution of a lease, which he claimed he had been induced to sign through the representations of plaintiff, on whom he relied, that the lease was merely a copy of a lost contract, defendant was asked if plaintiff advised him about business affairs, such question was not objectionable as calling for a conclusion, since, under the circumstances, the answer called for was the result of observations and dealings with plaintiff that were peculiarly within the knowledge of the witness. p. 48.

8. APPEAL.—*Objection to Instructions.—Waiver.*—Alleged error in the giving of instructions is waived by appellant's failure to discuss them. p. 50.

9. TRIAL.—*Instructions.—Burden of Proof.*—Instructions informing the jury that the burden is on plaintiff to establish the material allegations of his complaint, and that plaintiff cannot recover if the evidence is evenly balanced on any proposition which he is bound to show by a preponderance of the evidence, telling the jury that the burden is on defendant to prove the material allegations of his affirmative answer, and that if he has not done so he must fail, and stating what is meant by the preponderance of the evidence, correctly state the law. p. 50.

10. LANDLORD AND TENANT.—*Action for Possession.—Instructions. —Issues.*—Where, in a landlord's action for possession, defend-

ant alleged that the relation of landlord and tenant never existed and that he had been induced to sign the lease through the representation of plaintiff that it was merely a copy of a contract relating to a conveyance of the land that defendant had made to plaintiff to secure a debt, an instruction that if defendant and his wife executed a deed to plaintiff solely to secure a debt owing to plaintiff, such deed, though absolute on its face, would be a mortgage and defendant would be entitled to possession of the property mentioned, and that such fact should be considered with all the other evidence relative to that issue in determining whether defendant knowingly executed the lease, was within the issues and a proper instruction on that branch of the case. p. 50.

11. TRIAL.—Instructions.—Invading Province of Jury.—Instructions are properly refused, which, if given, would invade the province of the jury. p. 51.

12. APPEAL.—Review.—Affirmance.—A judgment will be affirmed, where it appears that the case was fully and fairly presented to the jury and that substantial justice has been accomplished. p. 52.

From Gibson Circuit Court; Walter S. Jackson, Special Judge.

Action by Joseph S. Heston against Albert F. Dougan. From a judgment for defendant, the plaintiff appeals. Affirmed.

John W. Brady, Oscar M. Welborn, Lucius C. Embree and Morton C. Embree, for appellant.

Thomas Duncan, Arthur P. Twineham and Harvey Harman, for appellee.

IBACH, J.—This was an action by Heston, appellant, against Dougan, appellee, to recover the possession of certain lands alleged to be owned by appellant and occupied by appellee, as his tenant under a written lease. The issues arose on the complaint, the second paragraph of answer, which is a general denial, the amended third paragraph of answer, and appellant's first paragraph of reply in general denial to the amended third paragraph of answer. Appellee's first paragraph of answer and appellant's second paragraph of reply were stricken out on motion of the opposing parties. The amended third paragraph of answer set

out at some length the following alleged facts: Defendant is now and has been for more than twenty years last past continuously the owner in fee simple in possession of the real estate described in the lease set forth in the complaint. He never entered into the possession of said real estate by virtue of the pretended lease, or by any other agreement to rent said real estate from plaintiff, or in any manner whatever except as owner in fee simple. He admits writing his name to the pretended lease, under circumstances as follows: For some time prior to April 3, 1897, he had been indebted to Heston, owing to him $8,805.14, secured by notes and mortgages on the real estate described. On that day, in order to secure a further loan of $700, he executed a warranty deed to said property to Heston, and as a part of said agreement he and Heston entered into a contemporaneous parol agreement, whereby it was agreed that said deed should be executed as a mortgage to secure the debt then owing to Heston, Heston was to carry the indebtedness at the rate of six per cent interest until Dougan should be able to repay him, and was to pay taxes on the real estate, and furnish materials for repair of the buildings. Dougan was to remain in possession of and farm the real estate without hindrance from Heston, and make needed repairs. At any time that Dougan repaid principal and interest, taxes and money spent for repairs, Heston was to reconvey the real estate to him. The deed was executed as security for the loan of $9,504.14, and for no other purpose whatever. About June, 1897, Heston and Dougan reduced to writing the oral contract of defeasance aforesaid. In March, 1903, Heston came to Dougan and pretended that he had lost his written contract and represented to Dougan that he would have another agreement written, similar to the one claimed to have been lost, except as to the time of paying interest. He would have his attorneys prepare such an instrument, and Dougan need not quit work to go to Princeton to sign it,

but at his convenience could call at the office of said attorneys and sign the instrument. Dougan has a limited education, reads the English language imperfectly, and for the greater portion of his life has resided near Heston, who is a very intelligent, prosperous and farsighted business man, skilled in the transaction of business. Heston has aided him in conducting his affairs, advised him during his entire lifetime, and largely controlled his 'financial affairs and business transactions. At that time he had the greatest confidence in Heston, and relied on his advice in all business matters, which Heston knew. Heston had his attorneys prepare the pretended lease sued on, and failed, neglected and refused to notify Dougan that the contract was a lease, but fraudulently represented to him that the instrument prepared was an exact copy of the former contract, and not a lease. Dougan relied on these representations, and on March 23, 1903, drove into Princeton with a two-horse load of grain, and went to the office of Heston's attorneys. Finding no place to hitch his horses, he left them unhitched, and went to the office, where he was informed by the attorneys that they had prepared the paper under the direction of Heston. Being anxious about his team, which he had left unhitched, and relying on Heston's representations, he signed the pretended lease set out in the complaint, without attempting to read it, or having it read to him. He did not know until just before this action was brought that the paper he signed was not a copy of the lost contract, but was in terms a lease. He would not have signed it had it not been for his reliance on Heston's representations and his belief that they were true. Heston has never had anything to do with the management of the farm. Dougan has never paid Heston any rent, but has paid him six per cent interest annually on the sum owing him—$9,504.14. The land in question forms a farm of 188 acres in one body, near the city of Princeton, Indiana, and at the time the deed was executed was worth more than $15,000, and its

rental value was more than $6 an acre. At the time the pretended lease was executed the land was worth $100 an acre, and Heston knew it. In June, 1902, Dougan went to Heston and told him that he was then ready and willing to repay him all that he owed him, and asked him to reconvey the land to him, and continuously since that day to the present time he has been ready, willing and able to make such repayment. He prays for judgment for his costs.

Trial by jury resulted in judgment for appellee.

The errors relied on for reversal are (1) overruling the demurrer to the amended third paragraph of answer, (2) striking out the second paragraph of the reply to the amended third paragraph of answer, and (3) overruling the motion for a new trial. Appellant contends that the amended third paragraph of appellee's answer is bad because

1. he attempts thereby to controvert his landlord's title to the leased premises, which cannot be done during the existence of the tenancy. This principle, which appellant strongly argues, is well established, and is admitted by appellee. The rule announced, however, is not applicable to the case at bar. The sole purpose of the amended third paragraph of answer is to deny the allegations of the complaint in every particular. Appellee expressly denies in it the existence of the tenancy averred in the complaint, and if the relation of landlord and tenant never did exist between the parties, then appellee would not be controlled by the doctrine that during the existence of the tenancy the tenant is prevented from controverting his landlord's title. Such relation between the parties was absolutely necessary to enable appellant to maintain his action, and it was not improper for appellee to aver such facts as tended to show that no such relationship ever existed between them.

2. It may be said, however, that even if the answer assailed was in fact bad, yet the ruling of the court would not be reversible error, for all matters averred therein were admissible under the general denial. In the case of

*Ward* v. *Pittsburgh, etc., R. Co.* (1900), 25 Ind. App. 405, 58 N. E. 264, which was an action by a landlord to recover possession of real estate, in which appellant's answer set up facts very similar to those set up by the amended third paragraph of answer in the case at bar, the court said: "Whether or not the appellant's answer contained a sufficient defense, there could be no available error in sustaining the demurrer. If, as contended in argument, the facts pleaded constituted coercion, they could have been made as available on the trial without any pleading on behalf of the appellant as they could have been if the demurrer had been overruled." The decision in the above case is based on the decision in the cases of *Poffenberger* v. *Blackstone* (1887), 57 Ind. 288, and *Smith* v. *Pinnell* (1896), 143 Ind. 485, 40 N. E. 798.

The action of the trial court in striking out appellant's second paragraph of reply to the amended third paragraph of answer was somewhat unusual and irregular, but 3. as appellant was not prejudiced by such ruling, we cannot hold that the court's action in this particular constitutes reversible error. The procedure and pleading in the circuit court in suits begun by a landlord against a tenant to recover lands follow the procedure in civil cases before justices, and by statute in civil cases before justices no replication is necessary, and any matter which might have been replied to any plea may be proved as if so replied. §1752 Burns 1908, §1463 R. S. 1881. *Poffenberger* v. *Blackstone, supra; Smith* v. *Pinnell, supra; Ward* v. *Pittsburgh, etc., R. Co., supra.* Appellant's reply was an unnecessary pleading.

On motion for a new trial, is presented the question whether appellee was entitled to have the case tried by a jury as a matter of right. Appellant contends that 4. the amended third paragraph of answer raises an equitable issue which should have been tried by the court and not by the jury. We must determine this con-

tention from the character of the issues to be decided 5. as they appear from the substantial and material facts averred in the pleadings. It will be observed from appellant's complaint that he claims to hold the fee simple title to the land, thereby asserting the legal title, and not merely an equitable interest therein. To this complaint appellee filed a general denial, and in addition thereto a third paragraph of answer, which might be termed an argumentative denial, wherein he avers facts tending to show such relations, both business and otherwise, existing between the parties as to constitute appellant a confidential adviser of appellee, also that the instrument involved in the suit was signed by him on account of the faith and confidence which he reposed in appellant, and further averring that the relation of landlord and tenant never existed between the parties. Appellee did not ask for any affirmative relief. The cases cited above all hold that in 6. actions of this character all defenses, legal and equitable, are admissible under the general denial, as the statutes are interpreted by them. This being true, it will be observed that the substantial averments of 4. the pleadings before us present an ordinary action in ejectment, regardless of the special answer filed by appellee, which we have said amounts simply to an argumentative denial, and the trial court did not err in permitting the cause to be tried by the jury. The Supreme Court of this State, in the case of *Martin* v. *Martin* (1889), 118 Ind. 227, 237, 20 N. E. 763, lays down the rule as follows: "Whenever the cause of action is one that can only be enforced by invoking the equitable power of the court, then the right of trial by jury does not maintain; but if the cause of action does not depend on the equitable jurisdiction of the court, then a jury trial may be demanded."

Woollen, Spec. Proc. §1034, says: "Our statutory action for the recovery of real property is intended to substitute for the old action of ejectment, with its cumbersome machinery

and useless fictions, a simple and more sensible proceeding, that will give a direct road to the merits of the controversy. It clearly contemplates a trial by jury, and the provisions heretofore referred to make the same rule applicable to actions to quiet title. In both actions a jury trial is demandable as a matter of right, upon the request of either party; and this is true where by a cross action the cross-complainant seeks to recover the possession of or to have the title quieted to his real estate.''

The case of *Lock* v. *Moulton* (1895), 108 Cal. 49, 41 Pac. 28, is a case presenting almost exactly the same issues as the present case, being an action in ejectment, in which the defense was that the deed relied on by plaintiff was, though in form an absolute deed, in fact only a mortgage. The court refused a trial by jury of the whole cause, but tried what he called the equitable issue—as to whether the deed was intended to operate as a mortgage—without a jury. For error in refusing to submit the entire case to the jury the case was reversed, on the ground that the allegations in the answer, to the effect that the deed was intended as mere security for a debt, do not constitute an equitable defense, in the proper sense of that term, since they might have been proved under the general denial.

Complaint is made that the court permitted Dougan, testifying in his own behalf, to answer the following questions:
''Well, now, Mr. Dougan, you may state whether or not Mr. Heston had advised you on business affairs? A. He had. * * * Whether he advised you about other business affairs? A. He advised me on all my transactions in business, everything.'' Appellant's contention is that these questions call for the opinion or conclusion of the witness, and not for facts.

The dividing line between what is a fact and what is an opinion does not readily appear in all cases, so that we are not able to give a general rule applicable to all cases requiring the rejection as evidence of what might be termed the

opinion or conclusion of the witness. But in this case it was certainly competent for the witness to state that Heston advised him in his business affairs, for this was the statement of an ultimate fact, peculiarly within the knowledge of the witness, and not a mere conclusion. By his answers to the foregoing questions he was simply giving the result of his personal observations and dealings with Heston extending over a number of years, taken collectively, and which he could not in any manner but imperfectly describe if required to give them in detail. The witness might have stated as best he could the number of times he talked with appellant and the subject of each conversation, as nearly as he could remember each separately, and yet he could not have put the jury in his place as to the effect of the several conversations on Heston's part, his conduct, his appearance and various other matters and conditions which may have impressed the witness at each time, and from which he was justified in answering the questions in the manner in which he did answer them. The whole subject of investigation presented by these questions was then open for the defendant to inquire into on cross-examination, and he would have been permitted to carry the investigation as far as he might choose. This is not a relaxation of the well-settled rule that the opinion of a witness who is not a professional person or an expert is not admissible, and the questions were proper under the circumstances of the case before us. 3 Wigmore, Evidence §1919. It is also argued that the alleged relation of appellant as business adviser to appellee was directly involved as an issue made by the pleadings. That such relation existed, was only one of many things which the jury would have to find in order to render a judgment for appellee, and the evidence is not open to the objection that it answers the very question which the jury is to determine.

Appellant also insists that the court erred in refusing to

give to the jury certain instructions tendered, and numbered 9, 13, 15, 16, 20, 21, 23, 24, 30, 31, 32, 35 and 36; also in giving instructions requested by appellee numbered 1, 3, 13, 14 and 15; and in giving on its own motion those numbered 1, 2, 3, 4 and 5. Errors as to instructions Nos. 1, 3 and 15, given at the request of appellee, and Nos. 4 and 5, given on the court's own motion, have been waived by failure to discuss them.

Instruction No. 1 given on the court's own motion, informed the jury that the burden was on the plaintiff to establish the material allegations of his complaint, and if on any proposition on which the plaintiff was bound to show a preponderance of evidence the evidence was evenly balanced, he could not recover. This instruction was proper, and shows no favor to appellant or to appellee. By instruction No. 2 at the court's own motion, the jury was told that the burden of proof was on defendant to prove the material allegations of his affirmative answer, and if he failed so to do he must fail in his suit. Instruction No. 3 informed the jury as to what is meant by the preponderance of the evidence. Taking these three instructions separately and together we find that they correctly state the law, and the jury could not have been misled by any one of them.

Instruction No. 13, given at appellee's request, is as follows: "If you believe from the evidence that on the 5th day of April, 1897, the defendant and his wife executed to the plaintiff a warranty deed to the lands involved in this action and that said deed was executed for the sole purpose of securing an indebtedness of $9,505.14, then owing from the defendant to the plaintiff, then such deed, though absolute on its face, would be a mortgage in fact and under the circumstances, the defendant would be entitled to the possession of the real estate mentioned in the lease sued on in this action. If the defendant was entitled to the possession as hereinbefore explained, then you may consider that fact with all the other evidence relative to that

issue in determining whether or not the defendant knowingly executed the lease mentioned in the complaint.'' Appellant insists that this instruction is not within the issues and is not within the evidence. We do not agree with this contention, for it appears throughout the entire proceeding that this was one of the principal controverted questions, and the jury was properly informed by the instruction given, as to the law on this branch of the case.

Again, appellant contends that the trial court erred in giving to the jury instruction No. 14, requested by appellee, the principal objection being that there was no evidence before the jury of any relation of trust and confidence on which it could have excused the negligence of appellee in signing the deed without reading it. It is apparent from the evidence found in the record that it was contended by one party and denied by the other that the signature to the lease was obtained by unfair methods, that confidence of such a high degree was reposed in appellant by appellee, and he was so influenced by reason thereof, as to excuse his failure to read the lease before signing it. The question was one clearly within the issues, and on which much testimony was heard, and it was highly necessary and proper for the court to instruct the jury on this branch of the case, which was correctly done in the instruction given. We also find that this instruction was peculiarly applicable to the case at bar when we read it in connection with instruction No. 2, given of the court's own motion, and instruction No. 19, given at the request of appellant, in which the fraud and deceit referred to in instruction No. 14 are fully explained.

Instruction No. 9 asked by appellant, was fully covered by instructions Nos. 10 and 11, given at his request. Instruction No. 23 was properly refused, because it clearly invaded the province of the jury, and if given would practically have directed what its verdict should be, regardless of the fact that there was much conflict in the evidence on the question as to whether or not appellee knew

when he signed the lease that it was such an instrument, or whether he believed that it was a defeasance, and would have instructed the jury to find for plaintiff, notwithstanding there was conflict also in the evidence on the prior relations existing between the parties, and particularly as to whether such relations and conduct on the part of appellant would excuse appellee for signing the instrument without reading it to discover its real character.

Additional objections, some merely technical, are presented because of the refusal to give other instructions requested by appellant. Without discussing those to which we have not already called attention, it is sufficient to say that the case was fully and fairly presented by the court to the jury in what seem to us to be very accurate and intelligent instructions, whereby the attention of the jury was called to every phase of the law applicable to the evidence and issues in the case. It is equally apparent that the case has been fairly tried and substantial justice has been accomplished, therefore the judgment is affirmed.

NOTE.—Reported in 96 N. E. 614. See, also, under (1, 3, 6) 24 Cyc. 1404; (2) 31 Cyc. 385; (7) 17 Cyc. 216; (8) 3 Cyc. 388; (9) 38 Cyc. 1748; (11) 38 Cyc. 1646; (12) 3 Cyc. 418. As to unlawful detainer, see 120 Am. St. 32. As to civil actions for forcible entry and detainer, see 121 Am. St. 369. For a discussion of the estoppel of a tenant to deny the landlord's title in an action by the landlord to recover possession of the premises, see Ann. Cas. 1912 D 101.