Gloria A. MURRAY, et al.,
Appellants/Cross–
Appellees,

v.

CITY OF LAWRENCEBURG, Lawrence Conservancy District, and Indiana Gaming Company, L.P., Appellees/Cross–Appellants.

No. 15A04–0803–CV–122.

Court of Appeals of Indiana.

March 19, 2009.

Transfer Granted July 2, 2009.

---

**8.** I note that it is unclear from what CHINS statute this standard comes.

Douglas R. Denmure, Aurora, IN, Attorney for Appellants/Cross–Appellees.

Joseph W. Votaw, II, Lawrenceburg, IN, Attorney for Appellee/Cross–Appellant, City of Lawrenceburg.

Richard A. Butler, Lawrenceburg, IN, Attorney for Appellee/Cross–Appellant, Lawrenceburg Conservancy District.

Jan M. Carroll, E. Timothy DeLaney, Barnes & Thornburg LLP, Indianapolis, IN, Attorney for Appellee/Cross–Appellant, Indiana Gaming Company, L.P.

## OPINION

MATHIAS, Judge.

Gloria Murray et al. ("the Plaintiffs") brought suit against the City of Lawrence ("the City"), the Lawrenceburg Conservancy District ("the Conservancy District"), and Indiana Gaming Company, L.P. ("Indiana Gaming") (collectively "the Defendants"), claiming ownership of a certain portion of land being used by the Defendants. The Defendants filed a motion for a judgment on the pleadings, which the trial court denied. The trial court then denied the Plaintiffs' demand for a jury trial. The Plaintiffs now bring this interlocutory appeal and claim that the trial court erred in denying their demand for a jury trial. The Defendants cross-appeal and claim that the trial court erred in denying their motion for judgment on the pleadings.

We affirm in part, reverse in part, and remand.

### Facts and Procedural History

This case involves a dispute concerning the ownership of a small parcel of land located in Dearborn County, Indiana. Specifically, there is a 0.768 acre parcel of land ("the Disputed Property"), located within a 32.074 acre parcel of land which is currently being used by Indiana Gaming as the docking site for a riverboat casino. The Plaintiffs claim ownership of the Disputed Property through an 1856 deed in which the Indiana and Cincinnati Railway Co. deeded 2.73 acres to an individual named Squire Watts. In 1886, Mr. Watts deeded the 2.73 acres to four individuals as tenants-in-common. Specifically, Mr. Watts gave an undivided one-third interest to Thomas W. Watts, an undivided one-third interest to Bailey H. Watts, and an undivided one-third interest jointly to Thomas and Nettie Barnes. These individuals eventually had part of the 2.73 acres partitioned and platted in 1888. The Plaintiffs claim to be the heirs, devisees, legatees, beneficiaries, and successors in interest to Thomas W. Watts, Bailey H. Watts, and Thomas and Nettie Barnes. The Plaintiffs now claim that the Disputed Property is the undivided, un-platted remaining portion of the 2.73 acres. By 1941, the Lawrenceburg Flood Control District Land Acquisition Map showed the Disputed Property as having an "unknown" owner, and the Plaintiffs claim that between 1941 and 1995, no one had possession or control or claimed ownership over the Disputed Property.

On December 28, 1995, the Conservancy District entered into an agreement wherein it leased to the City the 32.074 parcel including the Disputed Property. This lease warranties title to the 32.074 acres

except for the 0.768 acres that comprise the Disputed Property. On February 1, 1996, in an apparent attempt to clarify ownership of the Disputed Property, the Central Railroad Company of Indiana issued to the City a quitclaim deed covering the Disputed Property. Although the quitclaim deed gave no source of the title, the Central Railroad Company executed an affidavit to clarify title, recorded simultaneously with the deed, wherein it claimed that it had obtained title to the Disputed Property in 1865 by way of a deed from the White Water Valley Company. On August 20, 1996, the City subleased the 32.074 acre docking site, including the Disputed Property, to Indiana Gaming. Indiana Gaming began operations at the site on December 10, 1997.

On November 21, 2005, the Plaintiffs filed a six-count complaint against the Defendants [1] and demanded a jury trial. The Defendants answered the complaint, then, on August 16, 2006, moved for judgment on the pleadings. On February 15, 2007, the trial court issued an order denying this motion and, upon the Defendants' motion, certified its order for interlocutory appeal. On July 9, 2007, this court denied the Defendants' motion to accept interlocutory jurisdiction.

On November 27, 2007, the trial court issued an order denying the Plaintiffs' demand for a jury trial and again certified its order for interlocutory appeal. The Plaintiffs filed a motion asking this court to accept interlocutory jurisdiction. The Defendants filed a motion in opposition, arguing that we should not accept interlocutory jurisdiction, but that if we did, we should reconsider our earlier denial of the Defen-

dants' own motion to accept interlocutory jurisdiction over the trial court's order denying their motion for judgment on the pleadings.

On April 8, 2008, this court issued an order accepting interlocutory jurisdiction, but not directly responding to the Defendants' motion in opposition. The Defendants then filed a motion for clarification of our April 8 order. After the Plaintiffs responded, we issued an order on April 17, 2008, which stated in relevant part:

> Indiana Appellate Rule 9(D) provides in part "[a]n appellee may cross-appeal without filing a notice of appeal by raising cross-appeal issues in the appellee's brief." Accordingly, should the Appellee [i.e., the Defendants] herein wish to raise issues on cross-appeal, it may do so in its appellee's brief.

The Plaintiffs filed a motion to reconsider, which we denied. The Plaintiffs then filed a motion requesting clarification of our April 8 and April 17 orders. We granted this motion, explaining as follows:

> Under Indiana Appellate Rule 9(D), the Appellee may cross-appeal by raising cross-appeal issues in the appellee's brief. The appellee's brief shall contain any contentions the appellee raises on cross-appeal as to why the trial court committed reversible error. App. R. 46(D)(2). Thereafter, the Appellant's reply brief shall address the arguments raised on cross-appeal. App. R. 46(D)(3). The Cross–Appellant's reply brief may only respond to that part of the Appellant's reply brief addressing the Appellee's cross-appeal.

In their Appellees' briefs, the Defendants challenged on cross-appeal the pro-

---

**1.** Specifically, Count I is an action to quiet title in favor of the Plaintiffs; Count II seeks to set aside the quitclaim deed between Central Railroad Co. and the City; Count III seeks to set aside the leases between the Con-

servancy District, the City, and Indiana Gaming; Count IV seeks ejection, restoration, and damages; Count V claims negligence; and Count VI alleges unjust enrichment.

priety of the trial court's order denying their motion for judgment on the pleadings. The Plaintiffs responded by filing a motion to dismiss the Defendants' cross-appeal on September 18, 2008. In this motion, the Plaintiffs claim that the Defendants should not be allowed to present on cross-appeal any issue regarding the trial court's denial of the Defendants' motion for judgment on the pleadings because we had previously declined to accept interlocutory jurisdiction over this matter and because the Defendants' cross-appeal issues are "totally unrelated" to the issue presented in the Plaintiffs' interlocutory appeal. For the reasons set forth below, we decline to dismiss the Defendants' cross-appeal.[2]

### I. Propriety of Cross–Appeal

As a threshold issue, we address the propriety of the Defendants' cross-appeal, in which they challenge the trial court's denial of their motion for judgment on the pleadings. The Plaintiffs claim that the issue presented in the Defendants' cross-appeal is not properly before us because it is unrelated to the Plaintiffs' interlocutory appeal and because we had previously declined to accept interlocutory jurisdiction over the order which the Defendants now challenge. To resolve this issue, we turn to our Appellate Rules.

As a general rule, an appellee may cross-appeal simply by presenting cross-appeal issues in the appellee's brief; the appellant then becomes the cross-appellee and responds accordingly. *See* Ind. Appellate Rule 9(D); Ind. Appellate Rule 46(D)(2)–(4). Discretionary interlocutory appeals are governed by Appellate Rule 14(B), which provides that the trial court must first certify an interlocutory order for appeal; this court then has discretion to accept or deny jurisdiction over the interlocutory appeal.[3] *See* Ind. Appellate Rule 14(B)(1), (2). The question before us involves the interplay between the rules governing cross-appeals and those governing interlocutory appeals. Our Appellate Rules do not explicitly allow or prohibit cross-appeals to be presented on interlocutory appeals. The Appellate Rules simply provide for cross-appeals without limiting such to final appeals. Case law indicates, however, that the issues in an interlocutory appeal are limited to those presented to the trial court in ruling on the interlocutory order.

In *Harbour v. Arelco*, 678 N.E.2d 381, 386 (Ind.1997), our supreme court explained that trial courts certify *orders*, not specific issues or questions, for interlocutory appeal. In fact, the applicable Appellate Rule[4] "does not require *or even permit* certification of particular issues." *Id.* (emphasis added). Therefore, "[a]ny issues that were properly raised in the trial court in ruling on the [certified interlocutory] order are available on interlocutory appeal." *Id.; see also Budden v. Bd. of Sch. Comm'rs of City of Indianapolis*, 698 N.E.2d 1157, 1165 n. 14 (Ind.1998) (noting that certification of the interlocutory order, not the question, is proper). This would be true regardless of whether the issues were raised by the appellant or by the appellee on cross-appeal of the interlocutory order. *See State v. Keller*, 845 N.E.2d 154, 160 (Ind.Ct.App.2006) (ad-

---

2. We note here our denial, by separate order issued with this opinion, of the Plaintiffs' motion to dismiss the Defendants' cross-appeal.

3. Neither party claims that the issues now presented are entitled to interlocutory appeal as a matter of right. *See* App. R. 14(A).

4. The court in *Harbour* was referring to former Appellate Rule 4(B), which was substantially similar to current Appellate Rule 14(B).

dressing defendant's cross-appeal regarding issue which stemmed from same interlocutory order, but not the same motion, from which State appealed), *trans. denied.*[5]

■ If any issues that were properly raised in the trial court in ruling on the certified interlocutory order are available on interlocutory appeal, then issues which were *not* properly raised in the trial court in its ruling on the interlocutory order are *not* available on interlocutory appeal. *See Harbour*, 678 N.E.2d at 386. And this too would be true regardless of whether such issues were raised by the appellant seeking the interlocutory appeal or by the appellee in a cross-appeal. *See Keller*, 845 N.E.2d at 160.

Here, the Defendants wish to raise on cross-appeal an issue which is not directly related to the interlocutory order which the Plaintiffs are appealing. Pursuant to the above-mentioned case law, we normally would not consider such issues on cross-appeal because they were not issues presented to the trial court in its ruling on the interlocutory order. But the Defendants are not seeking to raise issues which were never presented to the trial court. Instead, they seek to challenge on cross-appeal an entirely separate interlocutory order. This interlocutory order was certified by the trial court and timely presented to this court, but we previously declined to accept interlocutory jurisdiction over this order.

■ Because we have already declined to accept jurisdiction over the Defendants' interlocutory appeal, the Plaintiffs claim that we should not now consider the Defendants' cross-appeal. Indeed, they argue that this would give the Defendants a "second bite at the apple." We note, however, that the earlier decision by the motions panel of this court to decline interlocutory jurisdiction is not binding on us. We may reconsider rulings by the motions panel of this court because we may reconsider any of our decisions while an appeal remains *in fieri.* *Miller v. Hague Ins. Agency, Inc.*, 871 N.E.2d 406, 407 (Ind.Ct. App.2007), *reh'g denied; Cincinnati Ins. Co. v. Young*, 852 N.E.2d 8, 12 (Ind.Ct. App.2006), *trans. denied.*

There is precedent for us reconsidering a denial of a motion to accept interlocutory jurisdiction. *See Bridgestone Americas Holding, Inc. v. Mayberry*, 854 N.E.2d 355, 359–60 (Ind.Ct.App.2006) (rejecting claim that this court did not have jurisdiction to consider interlocutory appeal where first motions panel declined to accept jurisdiction but, upon petition for rehearing, another motions panel accepted interlocutory jurisdiction), *trans. granted, summarily aff'd in relevant part by* 878 N.E.2d 189, 191 n. 2 (Ind.2007); *Lohm v. State*, 177 Ind.App. 488, 489, 380 N.E.2d 561, 562 (1978) (considering interlocutory appeal where this court initially denied petition to accept interlocutory jurisdiction but, upon petition for rehearing, accepted interlocutory jurisdiction).[6]

**5.** *But see Coca–Cola Co. v. Babyback's Int'l, Inc.*, 841 N.E.2d 557, 561 n. 2 (Ind.2006) (stating in footnote that some of the issues presented by the co-appellant in that case "were not among the *issues* certified for interlocutory appeal.") (emphasis added).

**6.** In *Merck & Co., Inc. v. Kantner*, 883 N.E.2d 846 (Ind.Ct.App.2008), the court refused to consider a petition for rehearing of an order by this court denying a petition to accept

interlocutory appeal. The majority in *Merck*, without discussing the contrary holdings in *Bridgestone* and *Lohm*, concluded that Appellate Rule 54(A), which governs petitions for rehearing, did not apply to a decision to decline to accept an interlocutory appeal. *Id.* at 847. Senior Judge Hoffman dissented, noting the holding in *Bridgestone.* *Id.* Here, we need not address any conflict between *Bridgestone, Lohm*, and *Merck*, because we are not being asked *upon rehearing* to reconsider our

Although we may reconsider our earlier decisions, we generally will not do so in absence of clear authority establishing that the motions panel erred as a matter of law. *Young*, 852 N.E.2d at 12. Our decision whether or not to accept discretionary interlocutory jurisdiction is entirely discretionary. Therefore, when reconsidering whether to accept discretionary interlocutory jurisdiction, the " 'erred as a matter of law' standard simply does not apply." *Bridgestone*, 854 N.E.2d at 360. Instead, the question remains entirely discretionary. *See id.* We emphasize, however, that:

> this court will not entertain routine repetitive motions to accept or oppose discretionary interlocutory appeals. In fact, *successive motions for discretionary interlocutory appeals are disfavored.* But in rare instances reconsideration of motions to accept or oppose discretionary interlocutory appeals may be appropriate, such as where a successive motion demonstrates good cause why the motion panel's initial ruling should be reconsidered.

*Id.* Here, we conclude that such good cause has been shown.

We first emphasize that the interlocutory order which the Defendants seek to challenge was certified for interlocutory appeal by the trial court, and the Defendants timely petitioned this court to accept interlocutory jurisdiction. Therefore, these jurisdictional prerequisites for interlocutory appeal have been met. And although we initially declined to accept interlocutory jurisdiction, circumstances have since changed. Specifically, we have accepted interlocutory jurisdiction over the Plaintiffs' discretionary interlocutory appeal. Moreover, the question at issue in the Defendants' cross-appeal is potentially dispositive, and judicial economy is certainly served by consideration of both certified interlocutory orders simultaneously. Indeed, there is little point in us addressing the Plaintiffs' argument that they are entitled to a jury trial if, in fact, the Defendants are correct that the Plaintiffs are entitled to no trial at all. Under these particular facts and circumstances, we choose to reconsider our earlier decision, and we hereby exercise our discretion to accept interlocutory jurisdiction over the Defendants' interlocutory appeal.

## II. Merits of Cross-Appeal

On cross-appeal, the Defendants claim that the trial court erred in denying their motion for judgment on the pleadings. Since this issue is potentially dispositive, we address it first. A motion for judgment on the pleadings is brought pursuant to Indiana Trial Rule 12(C) and attacks the legal sufficiency of the pleadings. *Fifth Third Bank v. Stanek*, 806 N.E.2d 861, 863 (Ind.Ct.App.2004), *trans. denied.* A motion for judgment on the pleadings should not be granted unless it is clear from the face of the complaint that under no circumstances could relief be granted. *Id.* We accept the allegations of the complaint, and the reasonable inferences arising therefrom, as true. *Id.* Therefore, only questions of law, and whether the trial court has correctly applied the law, concern us. *Id.* at 863–64. When a complaint shows on its face that it has been filed after the running of the applicable statute of limitations, judgment on the pleadings is appropriate. *Richards–Wilcox, Inc. v. Cummins*, 700 N.E.2d 496, 498 (Ind.Ct.App.

earlier denial of the Defendants' petition to accept interlocutory jurisdiction. Instead, because this case is before us on the Plaintiffs' interlocutory appeal, it remains *in fieri*, and

we have inherent authority reconsider any of our previous decisions in this case. *See Miller*, 871 N.E.2d at 407.

1998). Our review of the trial court's ruling on a motion for judgment on the pleadings is *de novo*. *Stanek*, 806 N.E.2d at 864.

■■■ The Defendants insist that all of the Plaintiffs' claims are derived from one central theory, i.e. that the Plaintiffs are the rightful owners of the Disputed Property and that the Defendants are wrongfully occupying and using the Disputed Property. The Defendants argue that the only remedy available under these circumstances is an action for inverse condemnation. The Defendants further claim that the statute of limitations for a claim of inverse condemnation has already run. Therefore, they argue, the trial court should have granted their motion for judgment on the pleadings, as the only available remedy for the Plaintiffs' claims is time barred.

■■■ The Defendants appear to be correct that actions for inverse condemnation are governed by a six-year statute of limitations. *See Scates v. State*, 178 Ind.App. 624, 625, 383 N.E.2d 491, 492 n. 2 (1978) (noting that inverse condemnation action would have been subject to six-year statute of limitations) (citing *Pickett v. Toledo, St. Louis & Kansas R.R. Co.*, 131 Ind. 562, 31 N.E. 200 (1892)); Ind.Code § 34–11–2–7(3) (stating that actions "for injuries to property other than personal property" must be commenced within six years after the cause of action accrues). We also note,

however, that although inverse condemnation actions are subject to a six year statute of limitations, it has been held that actions for eminent domain, which are closely related to inverse condemnation, are subject to the general ten-year statute of limitations found in Indiana Code section 34–11–1–2. *See Scates*, 178 Ind.App. at 625, 383 N.E.2d at 492 (citing the predecessor statute).

The Defendants further claim that the Plaintiffs' cause of action accrued, at the latest, on December 10, 1997, the date when Indiana Gaming began operations on the land which includes the Disputed Property, and thus any inverse condemnation action should have been filed within six years of this date. We agree that the Plaintiffs' claims would have accrued no later than the date when Indiana Gaming began operating its riverboat casino at the site.[7] The Plaintiffs filed their complaint on November 21, 2005, over eight years later. The Defendants therefore claim that the only possible claim the Plaintiffs could bring is barred by the statute of limitations.

The Plaintiffs respond by pointing out that their complaint presents several theories of recovery, none of which is a claim for inverse condemnation governed by the six-year statute of limitations. The applicable statute of limitations is determined by identifying the nature or substance of the cause of action. *Sinks v. Caughey*, 890 N.E.2d 34, 39 (Ind.Ct.App.2008). Of all

---

7. The Plaintiffs claim that the "discovery rule" should act to toll the statute of limitations in this case. The discovery rule provides that "'[a] cause of action accrues, and the statute of limitations begins to run, when the plaintiff *knew, or in the exercise of ordinary diligence, could have discovered* that an injury had been sustained as a result of the tortious act of another.'" *Meisenhelder v. Zipp Express, Inc.*, 788 N.E.2d 924, 927 (Ind.Ct.App. 2003) (quoting *Doe v. United Methodist Church*, 673 N.E.2d 839, 842 (Ind.Ct.App.

1996)). The Defendants claim that the discovery rule does not apply to cases involving the determination of who owns real property. We need not decide whether the discovery rule applies in the present case because, even if it did apply, we would conclude that the Plaintiffs, in the exercise of ordinary diligence, could have discovered that the Defendants were occupying and using the Disputed Property when the riverboat casino began operating at the site on December 10, 1997.

the counts in the Plaintiffs' complaint, none of them present, substantially, a claim for inverse condemnation.

The Defendants nevertheless contend that the Plaintiffs' exclusive remedy was an action for inverse condemnation, citing *City of Indianapolis v. L & G Realty & Constr. Co., Inc.,* 132 Ind.App. 17, 170 N.E.2d 908 (1960). The court in that case held that "an action at law for damages will not lie where an exclusive remedy for the assessment of damages is provided for by statute." 132 Ind.App. at 27, 170 N.E.2d at 914. In that case, the appellant had "pointed out no remedy which the appellee would be entitled to pursue under the cited statutes in this case, let alone any provision for an exclusive remedy." *Id.* Similarly, the Defendants here do not explain how the inverse condemnation statute provides for an exclusive remedy. In fact, our supreme court has explicitly stated that "inverse condemnation is *not* an exclusive remedy." *Calumet Nat'l Bank v. AT & T,* 682 N.E.2d 785, 791 (Ind.1997) (emphasis added).

The Defendants still contend that the mere *availability* of an action for inverse condemnation by the Plaintiffs precludes their current suit. The Defendants base this argument on *Dible v. City of Lafayette,* 713 N.E.2d 269 (Ind.1999). In that case, the plaintiff landowners sought declaratory and injunctive relief to stop the construction of sewer improvements on a utility easement located on the plaintiffs' property. Our supreme court held that, given the public purpose of the sewer improvements at issue, "if and to the extent they constituted any 'taking' of the Dibles' property, the Dibles would be entitled to just compensation. But for this there existed an adequate legal remedy at their disposal: a suit for inverse condemnation." *Id.* at 273 (footnote omitted). In so holding, the court wrote, "Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the government entity subsequent to the taking." *Id.* at 273 (citing *Town Bd. of Orland v. Greenfield Mills, Inc.,* 663 N.E.2d 523, 528 n. 7 (Ind.1996)); *see also City of Muncie v. Pizza Hut of Muncie, Inc.,* 171 Ind.App. 397, 400–01, 357 N.E.2d 735, 737–38 (1976) (holding that injunctive relief was proper for a taking which was for a private, not public, purpose).

The Defendants claim that the substance of the Plaintiffs' claims are equitable and that, under the holding in *Dible,* these equitable claims cannot be brought because the Plaintiffs have an adequate legal remedy in the form of an action for inverse condemnation. Although the Defendants' argument is clever and initially appealing, we are unable to agree.

 The simple problem with the Defendants' argument is that it "puts the cart before the horse." It *assumes* that the Plaintiffs own the real estate at issue. Inverse condemnation is the process provided by statute that allows *property owners* to be compensated when their property interests have been taken for public purposes without use of the eminent domain process. *Old Romney Dev. Co. v. Tippecanoe County,* 817 N.E.2d 1282, 1285–86 (Ind.Ct.App.2004); *see also* Ind. Code § 32–24–1–16 (2002) (stating that "[a] person having an interest in property that has been or may be acquired for a public use without the procedures of [eminent domain] is entitled to have the person's damages assessed under this article substantially in the manner provided in this article").

Obviously, someone who is not a property owner, i.e., someone who has no valid interest in property, has no right to maintain an action for inverse condemnation of

that property. Therefore, before we can address the question of whether there has been a "taking" for a "public purpose," it must first be determined who actually owns the property in question, i.e. whether the Plaintiffs are "person[s] having an interest" in the Disputed Property. The Plaintiffs claim that they are the rightful owners of the Disputed Property, and the Defendants obviously claim that they own the Disputed Property. Before there can be any action for inverse condemnation, there must be a determination of whether the Plaintiffs or the Defendants own the Disputed Property. If the Defendants are determined to be the owners, then this entire controversy ends. If, however, the Plaintiffs are the owners of the Disputed Property, then they may (or, if the applicable statute of limitations has run, may not) be able to bring an action for inverse condemnation. But the question of ownership must be resolved first. And this is accomplished by way of an action to quiet title.

The Defendants argue that, for purposes of the motion for judgment on the pleadings, the facts of the complaint are taken as true and that in the complaint, the Plaintiffs claim to be the owners of the Disputed Property. But this argument elevates form over substance. Both the Plaintiffs and the Defendants now claim ownership of the Disputed Property, and the means by which ownership thereof may be determined is an action to quiet title. Since our supreme court has specifically held that inverse condemnation is not an exclusive remedy, we cannot say that the Plaintiffs were required to bring a claim for inverse condemnation, especially since the ownership of the Disputed Property has not yet been determined.[8] Therefore, the trial court did not err in denying the Defendants' motion for judgment on the pleadings.

### III. Plaintiffs' Appeal

■ The thrust of the Plaintiffs' interlocutory appeal is that the trial court erred in denying their demand for a jury trial. The trial court concluded that since most of the Plaintiffs' claims were equitable, the entire case was drawn into equity and triable to the court. The Plaintiffs now claim that the heart of their complaint was the action to quiet title, which they claim is triable to a jury. They insist that their remaining claims are either also triable to a jury or ancillary equitable claims. The Defendants, of course, respond that the trial court was entirely correct in denying the demand for a jury trial.

This issue is controlled by the holding of our supreme court in *Songer v. Civitas Bank*, 771 N.E.2d 61 (Ind.2002), which dis-

---

8. Of course, the Plaintiffs must still bring their claims within the time limitations of the relevant statute of limitations. However, because their current appellate arguments are focused elsewhere, neither party has favored us with any argument regarding the timeliness of the multiple causes of action found in the Plaintiffs complaint. The timeliness of the Plaintiffs' claims should therefore be resolved upon remand. That having been said, based upon the record before us, the heart of the Plaintiffs' complaint, the quiet title and ejectment claims, do appear to have been timely filed. Subject to certain exceptions not relevant here, the general ten-year statute of limitations applies to actions to quiet title because no specific statute of limitations applies to such actions. 24 Ind. Law Encyclopedia, *Quieting Title* § 12 (2008). Similarly, actions for the recovery of real estate under the ejectment statute fall within the now ten-year statute of limitations found in Indiana Code section 34-11-2-11 (1999). *See Pilotte v. Brummett*, 165 Ind.App. 403, 406-07, 332 N.E.2d 834, 837 (1975) (referring to predecessor statute to Indiana Code section 32-30-2-1 as "the ejectment statute"); *Stevens v. Nieman*, 43 Ind.App. 317, 87 N.E. 153 (1909) (action for recovery of real estate under the ejectment statute fell within the then twenty-year general statute of limitations).

cussed Indiana's right to a trial by jury at length. The *Songer* court began its opinion with the observation that "[r]ecent practice and case law has inclined toward denying a request for trial by jury whenever a compliant joins claims in law and equity on the theory that any claim in equity 'draws the whole lawsuit into equity.'" *Id.* at 62. This, the court held, "narrows the right to trial by jury as guaranteed by the Indiana Constitution." *Id.* In *Songer*, the plaintiff, Civitas, filed a two-count complaint against the defendants. The first count was a complaint on a promissory note, and the second count was titled an action in "replevin," wherein Civitas sought an order authorizing it to liquidate the collateral it held. The defendants demanded a jury trial, which the trial court denied. On transfer, our supreme court addressed the question of whether the trial court had properly denied the defendant's request for a jury trial.

The court's discussion noted that Article 1, Section 20 of the Indiana Constitution provides, "In all civil cases, the right of trial by jury shall remain inviolate." *Id.* at 63. However, it has long been held that this provision preserves the right to a jury trial only as it existed at common law. *Id.* This principle is embodied by Indiana Trial Rule 38(A), which provides in relevant part:

> **Causes triable by court and by jury.** Issues of law and issues of fact in causes that prior to [June 18, 1852] were of exclusive equitable jurisdiction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. In case of the joinder of causes of action or defenses which, prior to said date, were of exclusive equitable jurisdiction with causes of action or defenses which, prior to said date, were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury, unless waived; the trial of both may be at the same time or at different times, as the court may direct.

Trial Rule 38(A) sets forth three general principles: (1) suits for which jurisdiction was exclusively equitable prior to 1852 are to be tried to the bench; (2) issues of fact in all other suits are to be tried "as the same are now triable"; and (3) when both equitable and legal causes of action or defenses are joined in a single case, the equitable causes of action are to be tried by the court while the legal causes of action are to be tried by a jury. *Songer,* 771 N.E.2d at 64.

After examining the history of cases interpreting Trial Rule 38(A) and its statutory predecessors and discussing what it called "modern detours" in the case law which deviated from the basic principles,[9] the court emphasized that if the essential features of a suit as a whole are equitable, and the individual causes of action are not distinct or severable, the entitlement to a jury trial is extinguished. *Id.* at 68. Conversely, if a single cause of action in a multi-count complaint is plainly equitable, and the other causes of action assert claims that are sufficiently distinct and severable, Trial Rule 38(A) requires a jury trial on the severable, legal claims. *Id.* The simple inclusion of an equitable claim, standing alone, does not warrant drawing an entire case into equity. *Id.*

◼ Therefore, in determining the right to a jury trial:

a legal theory of a lawsuit. *Id.* at 66. Thus, several causes of action may be encompassed in a single cause. *Id.*

9. The *Songer* court also noted the difference between a "cause" and a "cause of action." A "cause" is a lawsuit; a "cause of action" is

The appropriate question is whether the essential features of the suit are equitable. To determine if equity takes jurisdiction of the essential features of a suit, we evaluate the nature of the underlying substantive claim and look beyond both the label a party affixes to the action and the subsidiary issues that may arise within such claims. Courts must look to the substance and central character of the complaint, the rights and interests involved, and the relief demanded. In the appropriate case, the issues arising out of discovery may also be important. *Id.* Applying this rule to the case before it, the *Songer* court concluded that the purpose of the plaintiff's suit was to establish an amount which it was entitled to collect from the collateral it held. *Id.* at 69. Thus, the plaintiff did not seek a money judgment so much as a court order authorizing it to foreclose a lien on property. *Id.* Since foreclosures are "essentially equitable" in nature, the whole claim was drawn into equity, including related legal claims and counterclaims. *Id.*

Applying the *Songer* holding to the complaint before us is no easy task. The Plaintiffs' complaint is a good example of the "shotgun" approach to litigation. The Plaintiffs likely brought every possible claim that could potentially apply in the present situation. The Plaintiffs nevertheless insist that the heart of their complaint is Count I, seeking to quiet title of the Disputed Property, and that they are entitled to a jury trial as of right on this claim. The Defendants insist, however, that a quiet title action is essentially equitable, and that the Plaintiffs are not entitled to a jury trial thereon.

■ Count I of the complaint seeks to quiet title of the Disputed Property in favor of the Plaintiffs. Historically, an action to quiet title was equitable in nature. *See Johnson v. Taylor,* 106 Ind. 89,

5 N.E. 732, 734 (1886) (prior to statutory provision for quieting title, actions to quiet title were "subjects of 'exclusive equitable jurisdiction.'"). Quite early, however, Indiana enacted a statute governing actions to quiet title. *See id.* (referring to Ind.Rev.Stat. 1070 (1881)); *see also* Ind. Code § 32–30–3–14 (2002) (current quiet title statute). The statutory action to quiet title is "an extension of the equity doctrine, which settled titles under a proceeding called a 'bill of peace.'" *Woodward v. Mitchell,* 140 Ind. 406, 39 N.E. 437, 439 (1895) (citations omitted). If this were all the case law revealed, it would seem apparent that a quiet title action was equitable in nature and, therefore, that there was no right to a jury trial in such actions.

However, our courts have long held that, despite its equitable origins, a statutory action to quiet title *is* triable to a jury. *Folsom v. Buttolph,* 82 Ind.App. 283, 143 N.E. 258, 260 (1924) (holding that suits brought under quiet title statute, even though not actions at law, are triable to a jury) (citing *Puterbaugh v. Puterbaugh,* 131 Ind. 288, 30 N.E. 519, 521 (1892)). But it has also been held that an action to quiet title, though triable by jury, is governed by equitable principles. *See Jolliffe v. Crawford,* 76 Ind.App. 282, 132 N.E. 300, 302 (1921); *Johnson,* 106 Ind. 89, 5 N.E. at 734; *see also Terpstra v. Farmers & Merch. Bank,* 483 N.E.2d 749, 757 (Ind. Ct.App.1985) (noting that quiet title actions are a statutory as well as an equitable remedy), *trans. denied.*

■ Even though an action to quiet title has equitable origins and is governed by equitable principles, in the language of Trial Rule 38(A), actions to quiet title were nevertheless not of "exclusive equitable jurisdiction" prior to June 18, 1852. *Puterbaugh,* 131 Ind. 288, 30 N.E. at 521; *Trittipo v. Morgan,* 99 Ind. 269 (1884).

Therefore, even if a quiet title action is not purely legal, for purposes of Trial Rule 38(A), an action to quiet title is not an equitable cause of action which is triable to the court. Thus, Count I of the Plaintiffs' complaint sets forth a cause of action that, standing alone, would be triable to a jury. The question before us, however, is whether essential features of the Plaintiffs' suit sound in equity. Therefore, we must examine the remainder of the Plaintiffs' complaint.

The relief sought in Counts II and III is clearly equitable. Count II seeks to set aside both the quitclaim deed issued by the Central Railroad Co. to the Conservancy District and the affidavit to clarify title recorded contemporaneously with the quitclaim deed, and Count III seeks to set aside the leases between the Conservancy District, the City, and Indiana Gaming, or, in the alternative, to renegotiate the terms of the lease with the Plaintiffs. It is clear that "a suit to set aside a deed is submitted to the equitable jurisdiction of the trial court." *McClamroch v. McClamroch*, 476 N.E.2d 514, 519 (Ind.Ct.App.1985) (citing *Daugherty v. Daugherty*, 118 Ind.App. 141, 145, 75 N.E.2d 427, 429 (1947); *Monnett v. Turpie*, 132 Ind. 482, 32 N.E. 328, 329 (1892)). Similarly, the request to set aside the leases or renegotiate the contracts seeks non-monetary relief and is equitable in nature. *See Nielsen Buick Jeep Eagle Subaru v. Hall*, 726 N.E.2d 358, 360 (Ind. Ct.App.2000) (rescission of contracts is an equitable remedy).

Count IV is multifaceted, listing seven different claims for relief: (1) ejectment of the Defendants from the Disputed Property; (2) restoration of the Disputed Property to its "original condition" by removal, at the Defendants' cost, of any improvements placed on the property; (3) a perpetual and exclusive easement by necessity for ingress and egress; (4) compensatory damages in the way of lost rents and profits, in addition to punitive damages; (5) in the alternative to ejectment, restoration, and the easement, compensatory damages for future rents and profits; (6) pre- and post-judgment interest attributable to all damages; and (7) costs and expenses for maintaining the action.

The claim in Count IV for ejectment of the Defendants from the disputed property is a legal claim. An action for ejectment was historically a legal action for the settlement of disputed claims relating to title and possession of land. *State ex rel. Dep't of Natural Res. v. Winfrey*, 419 N.E.2d 1319, 1321 (Ind.Ct.App.1981) (citing *Emerick v. Miller*, 159 Ind. 317, 64 N.E. 28 (1902)); *see also Midwest Sec. Life Ins. Co. v. Stroup*, 730 N.E.2d 163, 169 (Ind. 2000) (Boehm, J., concurring) (listing ejectment among legal actions as of June 18, 1852); *Heston v. Dougan*, 52 Ind.App. 40, 96 N.E. 614, 616–17 (1911) (holding that trial court did not err in permitting jury trial where the substantial averments of the pleading presented an ordinary action in ejectment), *trans. denied*.

The claim under Count IV for restoration of the Disputed Property is an equitable request that the trial court order the non-monetary relief of the Defendants removing improvements they placed on the property. *See McDowell v. United States*, 870 P.2d 656, 661 (Colo.Ct.App.1994) (contrasting equitable relief of requiring removal of improvements with monetary damages). The portion of Count IV seeking an easement by necessity is also equitable in nature. *See Hay v. Baumgartner*, 870 N.E.2d 568, 572 (Ind.Ct.App.2007) (noting that easements are enforced in equity), *trans. denied*; 28A C.J.S. Easements § 243 ("The judicial creation of an easement is inherently equitable in nature.").

The remainder of Count IV seeks monetary damages in one form or the other,

which are obviously legal, not equitable, claims. Similarly, Count V seeks monetary damages under a legal claim of negligence.

█ Count VI seeks a judgment against the defendants for past income they have earned as a result of their use of the Disputed Property under a theory of unjust enrichment. It has been held that unjust enrichment is an "equitable concept." *Pond v. McNellis*, 845 N.E.2d 1043, 1056 (Ind.Ct.App.2006), *trans. denied.* However, "the phrases quasi-contract, contract implied-in-law, constructive contract, and *quantum meruit*" have been used synonymously to describe "*legal* fictions providing a remedy to prevent unjust enrichment. . . ." *Nehi Beverage Co. v. Petri,* 537 N.E.2d 78, 85 (Ind.Ct.App.1989), *trans. denied.* These legal fictions were created by courts of law, and "were triable at law and not in equity, thus one is entitled to a jury trial upon them." *Id.* Furthermore, "[T]he statement concerning the action of quasi-contract being equitable has been repeated many times, but merely refers to the way in which a claim should be approached, since it is clear that the action is at law and the relief given is a simple money judgment." *Id.* (citations and internal quotations omitted). Thus, we conclude that the Plaintiffs' claim for unjust enrichment requesting a simple money judgment is a claim for legal, not equitable, relief.

Looking, as we must, to the nature of the underlying, substantive claims of the Plaintiffs' complaint to determine the essential features of the lawsuit, we conclude that the essential features of the Plaintiffs' complaint do not sound in equity. Instead, the essential features of the complaint are the quiet title and ejectment actions—both designed to determine ownership of the Disputed Property. Both the quiet title and ejectment claims are, as noted, triable to a jury. The inclusion of the equitable claims, although more than the inclusion of a single equitable cause of action, are not sufficient to make the essential features of the lawsuit equitable. Indeed, of the twelve claims in the complaint, eight are legal in nature, and the equitable claims depend upon the resolution of the question of ownership—which is accomplished by means of the quiet title and ejectment claims, both of which are triable to the jury. Since the essential features of the lawsuit are not equitable, the entire case is not drawn into equity. Instead, the legal claims are sufficiently distinct and severable. Therefore, pursuant to *Songer* and Trial Rule 38(A), jury trials are required on these claims. The trial court should have granted the Plaintiffs' demand for a jury trial as to these legal claims.

### Conclusion

The Defendants' cross-appeal is properly before us, as our earlier decision to decline to accept interlocutory jurisdiction is not final, and we now, under these limited facts and circumstances, choose to reconsider our earlier decision to decline jurisdiction over the Defendants' appeal from the trial court's certified interlocutory order. Considering the merits of the Defendants' cross-appeal, we conclude that the Plaintiffs' were not required to bring a claim for inverse condemnation, because inverse condemnation is not an exclusive remedy and because ownership of the Disputed Property has not yet been determined. Therefore, the trial court did not err in denying the Defendants' motion for judgment on the pleadings. Lastly, the essential features of the Plaintiffs' lawsuit were not equitable, and the entire case is therefore not drawn into equity. On remand, as stated in footnote 8, *supra,* the trial court should resolve the timeliness of the Plaintiffs' claims; sever the timely-filed distinct, legal claims; and grant the

Plaintiffs' demand for a jury trial as to these claims. The judgment of the trial court is affirmed in part, reversed in part, and the cause is remanded for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BROWN, J., concurs.

BAKER, C.J., dissents with opinion.

BAKER, Chief Judge, dissenting.

I respectfully dissent.[10] At first glance, the majority's analysis, which hinges on the identity of the property owner, is compelling. Upon taking a closer look, however, I must disagree. Of course "the Defendants' argument ... *assumes* that the Plaintiffs own the real estate at issue"— that is what the complaint alleged. Op. p. 102 (emphasis in original). The Plaintiffs crafted their lawsuit around a central theory—that they are the rightful owners of the property. I believe that it is the nature of the *complaint* that frames the case, not the nature of the response. Thus, that the Defendants claim in their answer that they also own the property does not change the fact that all of the Plaintiffs' theories are premised on the opposite contention. I think that the result reached by the majority will effectively preclude most, if not all, inverse condemnation actions in the future, and I cannot countenance such a result.

Inasmuch as the Plaintiffs allege that they own the property, I believe that *Dible* forecloses them from any recovery aside from inverse condemnation. 713 N.E.2d at 274 (holding that "[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compen-

sation can be brought against the government entity subsequent to the taking"). Initially, I can only conclude that the allegedly unlawful possession and use of the Disputed Property would be a taking for a public purpose. In Indiana, the State directly benefits from the profits of the gaming industry. *See, e.g.*, Ind.Code § 4–33–12–6 (2002 & Supp.2008) (setting admission taxes on riverboat casinos); I.C. § 4–33–13–1 (2002 & Supp.2008) (setting 22.5% tax on adjusted gross receipts of riverboat casinos). Thus, the taking of the Disputed Property for use as a riverboat casino docking site was not a taking for a purely private purpose and amounted to a taking for a public purpose. Therefore, the Plaintiffs may not seek equitable relief. *See Dible*, 713 N.E.2d at 274.

Count I seeks to quiet title of the Disputed Property in the Plaintiffs' favor. Although a statutory action to quiet title is triable to a jury, an action to quiet title is governed by equitable principles. *See Terpstra v. Farmers & Merch. Bank*, 483 N.E.2d 749, 757 (Ind.Ct.App.1985) (noting that quiet title actions are an equitable as well as a statutory remedy). Here, the Plaintiffs seek non-monetary relief—a declaration that they are the owners of the Disputed Property. Thus, I can only conclude that, notwithstanding the fact that a quiet title action may be statutory and triable to a jury, the nature of the relief sought in a quiet title action is equitable. Consequently, the Plaintiffs have no right to seek this relief.

As the majority noted, the relief sought in Counts II and III is clearly equitable. As to Count IV, the majority aptly notes that it is "multifaceted," listing seven different claims for relief. Op. p. 106. I

---

**10.** As an aside, I agree with the majority's decision to address the Defendants' cross-ap-

peal.

agree with the majority that the facets of this claim seeking restoration of the Disputed Property and an easement by necessity are equitable in nature. I also agree that the claims for monetary damages based on lost rents and profits are legal actions but note that they are time-barred by a six-year statute of limitations. *See* Ind.Code § 34–11–2–7 (listing among actions that must be commenced within six years after accrual, "[a]ctions for use, rents, and profits of real property").

As for the portion of Count IV seeking ejectment, I simply cannot agree that the Plaintiffs can make an end run around a time-barred inverse condemnation claim by pursuing an alternate claim for ejectment. I believe that the General Assembly had to have intended that a party seeking redress for a dispute over governmental infringement on the individual's property rights is required to pursue an inverse condemnation claim within six years. To permit this ejectment claim to survive is to elevate form over substance to a degree that I cannot support. Therefore, I believe we should affirm the trial court's decision to refuse to hold a jury trial on this claim.

Count V is a negligence claim, seeking relief for the Plaintiffs' alleged economic loss stemming from their exclusion from the lease negotiations and agreements concerning the use and rent of their land. Appellants' App. p. 54. As stated above, actions for use, rents, and profits of real property must be commenced within six years after accrual of the cause of action. I.C. § 34–11–2–7. Therefore, this claim is untimely.

Count VI seeks relief under a theory of unjust enrichment. Whether framed as an equitable or legal claim, it is time-barred by the applicable six-year statute of limitations. *Id.* Thus, this claim is untimely and may not proceed to a jury.

The availability of an action for inverse condemnation precludes the Plaintiffs from obtaining the equitable relief sought in their complaint. An action for inverse condemnation, however, is time-barred by the applicable statute of limitations. Similarly, all but one of the Plaintiffs' remaining legal claims are barred by the applicable statutes of limitations. And as explained above, I can only conclude that the availability of an inverse condemnation claim bars the Plaintiffs from seeking ejectment as an alternate remedy. Therefore, I believe that the Plaintiffs are not entitled to a jury trial on any of their claims and I respectfully dissent from the majority opinion.